### TALLMAN *vs.* McCARTY et al.

APPEAL FROM CIRCUIT COURT, FOND DU LAC COUNTY.

Heard January 17.]                    [Decided June 4, 1860.

#### *Estoppel—Partition.*

In an action for partition of lands, the grantor of the plaintiff had been made a party defendant in a partition suit of the same lands, and decree had been entered in that suit: Held that the former suit was a bar to the second.

Where a party appeared in a cause, and moved for and obtained a postponement, and a setting aside of an order of sale, such appearance constitutes as valid an appearance in the cause as if he had caused his appearance to be entered in the case pursuant to the rules of court.

Tallman vs. McCarty.

The decree of a court having jurisdiction of the subject matter and of the parties, cannot be impeached in a collateral proceeding, or treated as a nullity, because made improvidently, or in a manner not warranted by law, or the previous state of the case.

This was a case in chancery, commenced by George C. Tallman against Sally McCarty and 120 others, in 1855. The bill set forth that in 1843 the patent of the United States was issued to Pierre Pauquette, for sections 11, 12, and 13, in township 15, range 17 east, in Fond du Lac county, as the reserve of Pauquette, under the Treaty with the Winnebagoes, approved February 13, 1833. On the 7th of January, 1836, Pauquette deeded to Burley Follett, section 11. On the 9th of May, Follett deeded an undivided one-half to M. L. Martin. On the 28th of November, 1842, Martin deeded an undivided one-fourth to The Farmers' and Mechanics' Bank, at Detroit. And on the 13th of March, 1853, the Bank deeded the undivided one-fourth of section 11, to Tallman, the plaintiff.

The bill then set forth, that Follett, in May, 1836, deeded one-half to John P. Arndt, and in January, 1837, Arndt deeded one-fourth to A. G. Ellis, and in April, Ellis deeded to William I. Wood; in June, Wood deeded to Henry T. Stringham; and in March, 1841, Stringham deeded to Soloman Davis; in February, 1850, Davis deeded to William Whelply one-eighth, undivided. On the 22d of May, 1840, Arndt deeded one-eighth to John W. Arndt; and in January, 1847, he deeded one-eighth to John A. Eastman. On the 26th of July, 1836, John P. Arndt deeded one-eighth, undivided, to William B. Stoughton, who, in July, 1844, deeded to William H. Sampson, 31, 11 acres undivided; and Sampson deeded the same to William B. Ransom, in November, 1849. In February, 1850, Davis deeded one-eighth, undivided, to Ransom. In May, 1850, Eastman deeded one-sixteenth to Jacob P. Dunning, and Dunning deeded E. W. Drury. In January, 1847, Follett deeded an undivided one-fourth to Byron Kilbourn, and in November, 1849, Kilbourn deeded one-sixth to Joel Buttles. In April, 1850, Buttles deeded to Marcellus K. Stowe. In November, John P. Arndt deeded one undivided sixteenth to H. E. Eastman.

The bill then set forth, that on the 3d day of February, 1848, John P. Arndt had in section 11, 40 acres; John A. Eastman had 80 acres; Wm. H. Sampson had 31, 11 acres;

The Farmers' and Mechanics' Bank had 160; Soloman Davis had 160; William B. Stoughton had 8, 89 acres; Joel Butles had 106, 67 acres; Byron Kilbourn had 53, 33; John McCarty, 31, 11 acres; and William B. McCarty had 31, 11 acres. The interest of Arndt of 40 acres was deeded to H. E. Eastman, in November, 1851.

On the 4th of February, 1848, John McCarty, William McCarty and Joel Buttles filed in the district court for Fond du Lac county, a petition for partition of the lands, describing the other owners as unknown, except Sampson, Davis, J. A. Eastman, The Farmers' and Mechanics' Bank, and John P. Arndt; and calling for an answer, &c. The petition was not sworn to by the petitioners, and was signed only by their solicitor. A subpœna was issued the same day, but there was no record of the return thereof. An order was made in the cause, requiring the defendants to appear, answer, &c., and for publishing the order in a newspaper. On the 16th of April, 1849, the circuit court, which had become possessed of the cause, appointed commissioners to make partition of the lands among the several owners. None of the defendants or owners had appeared, except Eastman, who appeared for himself alone. The commissioners qualified and made their report, that the land was all unimproved, and was located near the town of Fond du Lac, and its value depended more upon its location than upon its quality; therefore, they divided the whole into 40 acre tracts, and then subdivided each of these. Upon the coming in of this report, Eastman demanded that the section be sold in 40 acre tracts, and the proceeds distributed, and an order was made, accordingly. This sale was advertised to take place on the 8th day of October, 1849; but on the 15th of September, the Bank presented a petition, verified by its agent, asking that the sale might be postponed, the decree vacated, and the property be divided. This petition was granted. On the 14th of May, the Bank again moved the court to set aside the report of the commissioners, and that they should proceed to survey the section, and subdivide it among the owners. This order was granted, and on the 16th, the commissioners again reported that the section could not be divided, without great prejudice to the owners thereof, and recommending its sale. This report was accepted by the court, and the land was sold in parcels of from 4 to 40 acres each, bringing $13,097 66. This sale was confirmed by the court, and deeds made by the sheriff of the county.

*Tallman vs. McCarty.*

The bill then charged, that the purchasers at this sale, and those claiming under them, were then in possession of the lands, and sets forth the portions claimed by each, and traces their titles. On the 27th of October, 1851, Eastman moved the court to set aside all the proceedings in the cause, for the following reasons, appearing on the records: 1st. It did not appear that any subpœna was ever served upon the defendants in the cause, or that they ever appeared to said suit. 2d. It did not appear that the complainants offered any proof of title, or that they were owners of any part of the lands. 3d. It did not appear that any of the parties had established title in themselves to the land. And, 4th, the proceedings were irregular. This motion was never disposed of. Several motions were also made to dispose of the proceeds of the sale among the owners. The bill then closes with a petition that the lands be divided among the owners thereof, and that he may have the portion belonging to him, of one fourth part thereof, set apart to his use, and for an adjustment of all the rights of the parties; and also prayed for subpœna and answers.

Twenty-five of the defendants appeared, and demurred to the bill, for the reasons, 1, that the bill did not show that there was any error in law in the record sought to be reviewed; 2, the bill is barred by lapse of time; 3, the bill did not show that the complainant had any interest which would authorize the filing of the bill; 4, the bill was filed without leave of the court, and contrary to the practice and usage of the court of chancery; and, 5, the whole matters stated appeared to be *res adjudicata.*

This demurrer was sustained by the court, and the plaintiff appealed.

*J. M. Gillett,* for the defendants, and in support of the demurrer, cited the following authorities: Story's Eq. Pl., § 16 ; id., § 403 ; *Kennedy vs. Bank of Georgia,* 8 How., 609 ; *Whiting vs. Bank of United States,* 13 Peters, 15 ; Barb. Ch. Pr., 75 ; Story's Eq. Pl., § 409 ; 4 Wis., 275 ; 2 J. C. R., 243 ; 4 id., 95 ; 8 Paige, 275 ; 7 Paige, 195 ; Adams Eq., 728 ; Story Eq. Pl., § 428.

*E. S. Bragg,* on the same side, cited Turn. & Ven., 810 ; Mit. Eq., 277 ; Smith's Ch. Pr., 206 ; Lube's Eq. Pl., 325 ; 6 Sim., 51 ; 7 Paige, 195, 373 ; 4 Yerg., 94 ; 1 Dana, 92 ; 4 Wash. C. C., 631 ; Mit. Eq., 237 ; 4 J. C. R., 199 ; Story's Eq. Pl., §

Tallman vs· McCarty.

488; Cooper's Eq., 216; Story's Eq. Pl., § 428; Adams Eq., 728; id., 403; id., 354; 3 Wis., 493.

*Sleeper & Norton, contra,* cited R. S. Wis. Ter., 188, § 57; R. S. 1849, chap. 108, §§ 20, 21, 23; *Denning vs. Corwin,* 11 Wend., 647; *Foot vs Stevens,* 17 id.,483; *Hart vs. Sexias,* 21 Wend., 55; *Bloom vs. Burdick,* 1 Hill, 130; *Jackson vs. Brown,* 3 John., 459; *Borden vs. Fitch,* 15 John., 121; *Smith vs. Rice,* 11 Mass., 506; *Porter vs. Newhall,* 17 id., 81; *Cole vs. Hill,* 2 Hill; *Phelps vs. Green,* 3 J. C. R., 303.

*By the Court,* Dixon, C. J.　The objection that the Farmers and Mechanics' Bank of Michigan, under whom the complainant's claim title to a portion of the lands in question never appeared in the suit instituted in the district court of the United States for the territory of Wisconsin, on the 4th of February, 1848, by John McCarty and others, against the bank and others, cannot be sustained.　The petition of the bank on the 15th of September, 1849, for a postponement of of the sale then advertised to be made on the 8th of October following, pursuant to the decree of the previous April term of the court, and for a vacation of the decree, and the order thereupon obtained, and the motion and order setting aside the report of the commissioners, and recommitting the cause to them, made in May, 1850, constituted as valid an appearance upon the records of the court as if it had caused its appearance to be entered with the clerk in pursuance of the rules then in force in the court of chancery.　It came into court by its counsel and without objection from, and with the consent of the other parties to the action, made a motion which was the foundation of the order setting aside the previous report of the commissioners, and recommitting the matters in controversy to them.　The order was a clear and most unequivocal recognition of its appearance, and it cannot be said now that it never appeared.

As the complainant by virtue of his subsequent purchase from the bank of its interest in the lands, stands in the same relation to that suit that the bank would were it the complainant in this action, it only becomes necessary to determine, whether as to the bank the order of sale made on the 16th day of May, 1850, and subsequent proceedings, can be treated as a nullity.

We concur with the complainant's counsel in saying that this is not a bill of revivor, but an original bill, and the question arises, could the bank impeach the order or decree of sale in such collateral proceedings? We think not. The only ground upon which it could do so would be by showing that it was an absolute nullity, either for want of jurisdiction of the subject matter or the parties, or because the court had no power to make such an order in the action. Neither of these objections exist here. The court had jurisdiction of the subject matter, and so far as the bank was concerned, of the parties; and express power was given it by the statute to direct the sale. It is objected that no preliminary judgment declaring the rights, titles and interest of the parties, and determining the same, and decreeing that partition be made between them according to such rights as required by section 20 of chap. 108 of the Revised Statutes of 1849, was made; and that therefore the order which, by the course of proceeding marked out by the statute, could only be made afterwards, was void. This is not so. No order which a court is empowered under any circumstances in the course of a proceeding, over which it has jurisdiction, to make, can be treated as a nullity merely because it was made improvidently, or in a manner not warranted by law, or the previous state of the case. The only question in such a case is, had the court or tribunal, the power, under *any circumstances*, to make the order or perform the act? If this be answered in the affirmative, then its decision upon *those circumstances* becomes

final and conclusive, until reversed by a direct proceeding for that purpose. In the case before us it was for the circuit court to determine in the first instance when and how the authority with which it was invested to direct a sale, should be exercised; and if in so doing it committed an error, no matter how egregious, whether in the construction of the statute or otherwise, still the order was valid until reversed upon appeal. It was a mere error or irregularity, which could only be taken advantage of by appeal, but cannot be inquired into in this proceeding. Substantially the same question was before us at the last term of this court, *Faulkner vs. Guild*, 10 Wis., 563, where the same doctrines were announced.

The judgment of the circuit court is affirmed.

---

| 11 | 407 |
| 77 | 65 |
| 11 | 407 |
| 94 | 438 |

