## Case No. 13,986.

### THORNBURGH v. SAVAGE MIN. CO.

[1 Pac. Law Mag. 267; 7 Morr. Min. Rep. 667.]

Circuit Court, D. Nevada. 1867.

MINING—SURVEY—INJUNCTION—COURT'S JURISDICTION—SERVICE UPON CORPORATIONS—FOREIGN CORPORATION.

1. A court of equity has the power, in a mining case, to compel an inspection and survey of the claims and works of the parties, and ought to issue such order when satisfied that the application therefor is made in good faith and for the information of the court upon the questions involved in the case.

[Cited in Montana Co. v. St. Louis Mining & Milling Co., 152 U. S. 166, 14 Sup. Ct. 507.]

2. The court has acquired jurisdiction over the defendant—First, by his voluntary appearance in the action; and, second, by service of the subpoena upon the superintendent and general managing agent of the defendant within this district; that thereby the person of the defendant was found in the district, within the meaning of the judicial act of 1789; that by a strict construction of that act, and of the constitution, no corporation could be a party to a suit in the national courts.

3. There is "nothing in the character of a corporation to prevent its suing or being sued like a natural person. It is, in legal contemplation, a person having existence, invested with rights and subjected to liabilities, and very properly a party to proceedings in courts of law or equity whenever those rights or liabilities are drawn in controversy."

4. The corporation in this case in mining property, and carrying on a general business, by its officers and agents, within this district, ought to be, and is, subject to all the liabilities growing out of that business, and can be reached by process out of this court served upon such resident managing officers or agents, under section 29 of the practice act of this state, adopted by the rules of this court.

5. Any corporation having property in the state is "a body politic within this state," according to the thirteenth section of the act, directing proceedings against trustees of debtors.

The plaintiff [William B. Thornburgh] claimed to be the owner of a portion of a certain quartz ledge in Storey county, Nevada, called the "Mitchell Lode," and had commenced an action at law for the possession thereof, claiming that said lode was distinct from, but next adjacent to, the Comstock lode. The above action was brought in equity to restrain defendant, a corporation organized under the laws of the state of California, but owning property and doing mining business in the state of Nevada, from mining the premises in dispute at law. An injunction issued upon the return day of a rule to show cause, which rule the court found to have been properly served upon Charles Bonner, the superintendent and general managing agent of the defendant. While the injunction was pending, complainant moved, upon bill and affidavit before one of the judges of said court, at chambers, for an order of survey and inspection of the premises in dispute. The judge issued a rule

upon defendant to show cause therein, returnable the following day.

On the return day of said rule, in response thereto, the complainant, by Messrs. Mesick & Seely, solicitors, and the defendant, by Messrs. Hillyer & Whitman, solicitors, appeared before said judge at chambers, whereupon the complainant, through his solicitors, made formal application for the order of survey.

Mr. Hillyer, on behalf of the defendant, moved a postponement of the hearing until additional counsel could be procured from San Francisco.

A postponement for several hours was allowed to enable defendant's solicitors to prepare an argument against the order. When the hour arrived to which the hearing had been adjourned, Messrs. Hillyer & Whitman presented an affidavit of Mr. Charles Bonner in opposition to the application, setting up, among other things, that the complainant was not the true owner; that the real party in interest was not in court; praying time for the discovery of said facts; that the order was served on the defendant the day previous; that the principal counsel of the defendant resided in San Francisco, and that it was necessary that the defendant should have time to consult his counsel, and prepare his answer to the order; denying that the so-called "Mitchell Lode" was distinct from the Comstock lode, but claiming that the Comstock was the only lode in the premises in dispute, &c. Complainant's solicitors were given until seven o'clock to procure rebutting testimony, at which time they presented complainant's affidavit, traversing the affidavit of Mr. Bonner, whereupon the motion was argued pro and con and submitted. The judge, having taken the same under advisement, on the succeeding day granted the order. It was issued and served, and obeyed by defendant three days.

On the 26th of January, defendant, by Hillyer & Whitman, its solicitors, filed a cross bill, praying, among other things, an order of discovery upon the complainant under oath as to the nature of his claims to the premises in dispute, and the relation of other parties thereto, and for an injunction restraining the defendant from further proceeding. The injunction was denied, when the defendant closed its works, disobeying the order of the survey. The corporation of Mr. Bonner, the superintendent thereof, were cited to show cause why they should not be punished for contempt. The superintendent undertook to purge himself, on the ground that he was acting under advice of counsel, and that the order of survey was void for want of jurisdiction in the court granting it. The corporation was found guilty of the contempt, the court holding that it had acquired jurisdiction. Afterwards, pending the final termination of complainant's motion for an injunction, Mr. Hillyer, the solicitor for defendant, obtained leave to make a special appearance, and submitted a motion to quash all proceedings in the action, on the grounds —First, that the court has no jurisdiction of the case; second, that the court has no jurisdiction of the person of the defendant; third, that no service has ever been had on the defendant; and, fourth, that no service can ever be had on the defendant. The motion was overruled, and complainant renewed his motion for an injunction.

THE COURT asked Mr. Hillyer if he wished to make any resistance to the motion, intimating that time and opportunity for trial on the merits would be allowed. The response was in the negative, unless defendant be allowed to resist the injunction without being held a general appearance in the action.

BALDWIN, Circuit Justice. On the 12th day of February, instant, an injunction was granted against the defendant in this action, restraining it from mining upon certain premises in the complainant's bill described. The injunction issued upon the return day of a rule to show cause, which rule the court found to have been properly served upon the defendant. While the injunction was not immediately contested, prior to the granting thereof by the court, questions had arisen in the action, and adjudications had been made, of which, as well as of the facts which had transpired, it is thought best to preserve a record. On the 23d day of January, 1867, the complainant filed his bill in this court. The defendant is a corporation organized under the laws of California, but holding property and carrying on its business of mining in this state. A subpœna was issued upon the bill, and by the marshal served upon Charles Bonner, the superintendent and general managing agent of the defendant. The subject matter of the litigation thus commenced was a quartz vein called the "Mitchell Lode," alleged to exist immediately east of another vein admitted to belong to the defendant, and styled the "Comstock Lode." The day after it was filed, the complainant's solicitors, upon the bill and an affidavit, moved before one of the judges of this court, at chambers, for an order of survey and inspection of the premises in dispute, and of such mining works adjacent as might serve to enlighten the issues of fact in the action. At the same time a rule to show cause why an injunction should not issue was applied for, and, as is usual, was granted. The judge had in a previous case determined the propriety of granting an order of survey such as the complainant sought for here, but, in deference to the convenience of the defendant, declined to act ex parte, and issued a rule to show cause, returnable the following day.

The complainant's affidavit, upon which, together with his bill, the application for survey was based, and the judge's order thereon, it is thought worth while to copy in this opinion:

"United States of America, in the Circuit Court of the United States for the District of Nevada. In Equity. William B. Thornburgh, Complainant, v. The Savage Mining Company, Defendant. District of Nevada—ss.: Wm. B. Thornburgh, being duly sworn, deposes and says: That he is the complainant in the above-entitied suit. That the same has been brought and is pending in the above-entitled court, for the purpose of enjoining and preventing the defendant from further working or taking out ore or other mineral substance from or upon the premises and property of deponent, which are described as follows, to wit: That portion of a certain quartz lode commonly called and known as the 'Mitchell Lode,' and lying adjacent to, and next east of, the quartz lode commonly called and known as the 'Comstock Lode,' bounded on the north by the southern boundary line of the mining claim located and known as the 'Breckenridge Company's Claims,' and on the south by a line drawn at right angles with the course of the quartz lode worked by the Hale & Norcross Company, across said Mitchell lode, and through the said Hale & Norcross Company's north line, and being the northern portion of the mining claim located by I. E. Brokaw and others on the twenty-fifth day of January, A. D. 1861, as commencing at a certain stake at Burk's blacksmith shop, near C street, in Virginia City, and running thence southerly along and on said Mitchell lode, together with the dips, spurs, angles, and variations thereof, and surface room for the convenient working of the same as a mine, and the appurtenances; said premises and property being situated in the Virginia mining district, in Storey county, Nevada; which suit is in aid of an action at law, brought and pending on the law side of said court by the deponent against the defendant above named to recover possession of said property and premises from them. That the said defendants are in the exclusive possession of the said premises and property, and of all works, drifts, and developments by which the questions in controversy between the parties to said suit and action can be determined, and from an inspection of which only can the merits of the controversy be seen and understood. That the main question involved in the suit is, whether the premises and property described is a separate and distinct quartz lode, different and independent of and from the quartz lode known as the 'Comstock Lode'; the complainant, this deponent, contending and believing that the affirmative answer is true, and the defendant contending that the negative is the true answer. And this deponent further says that the premises, property, and quartz lode above described is a separate, distinct, and independent lode of and from the quartz lode known as the 'Comstock Lode,' and that the truth will be shown so to be by an inspection and survey of the works and drifts, and developments, existing in, upon, and over the said two lodes, and the intervening space, and such inspection and survey are necessary to the premises. [Signed] W. B. Thornburgh.

"Sworn and subscribed to before me, this January 24, 1867. Alex. W. Baldwin, U. S. Judge."

Endorsed: "Filed January 26, 1867. Silas Caulkins, Clerk."

"Wm. B. Thornburgh, Complainant, v. The Savage Mining Company, Defendant. District of Nevada—ss.: On reading the affidavit of Wm. B. Thornburgh, complainant in the above-entitled suit, and good cause appearing therefor, on motion of Mesick & Seely, solicitors for complainant, it is ordered that an inspection and survey be made by the complainant and his employés and attendants, not exceeding nine in number, of the following described premises, property, works, drifts, and developments, to wit: All that portion of a certain quartz lode commonly called and known as the 'Mitchell Lode,' and lying adjacent to and next east of the quartz lode commonly called and known as the 'Comstock Lode,' bounded on the north by the southerly boundary line of the mining claim located and known as the 'Breckenridge Company's Claims,' and on the south by a line drawn at right angles with the course of the quartz lode worked by the Hale & Norcross Company across said Mitchell lode, and through the said Hale & Norcross Company's north line, and being the northern portion of the mining claims located by I. E. Brokaw and others on the twenty-first day of January, A. D. 1861, as commencing at a certain stake at Burk's blacksmith shop, near C. street, in Virginia City, and running thence southerly along and on said Mitchell lode, together with the dips, spurs, angles, and variations thereof, and surface room for the convenient working of the same as a mine, and the appurtenances. Also, the Comstock lode, and any intervening space between said lodes, or the spaces on either side thereof, upon, in, or through which there exist any works, drifts, or other developments, together with all such works, drifts, or other developments, the same being situated in the Virginia mining district, county of Storey, and state of Nevada. That the defendants, their servants, agents, and employés, in charge of or working upon or in the aforementioned premises, property, works, drifts, or developments, permit the said survey and inspection to be made, and furnish and provide all the means in their possession of ingress and egress and traversing the same, to the said complainant and his employés and attendants aforesaid, each day, for the period hereinafter limited, and that this order take effect and be in force and binding upon all parties and persons upon the presentation to them, or any of them, of this order; and that the same continue in force for the period of five successive days on which such inspection and survey is being made. Let the

defendant show cause before me, at my chambers in the city of Virginia, on Friday, the twenty-fifth day of January, instant, at 10 o'clock a. m., why the above moved for order should not be granted. Alex. W. Baldwin, United States Judge, District of Nevada."

At 10 o'clock of the return day of this rule, and in response thereto, the complainant. by Messrs. Mesick & Seely, and the defendant, by Messrs. Hillyer & Whitman, came before the judge at his chambers. All these gentlemen are solicitors of this court. The complainant, through his solicitors, formally made his application for the order of the survey. Mr. Hillyer, on behalf of the defendant, requested the judge to postpone the hearing until additional associate counsel could be procured from San Francisco. A postponement for several hours was allowed, to enable the defendant's solicitors to prepare an argument in opposition to the order. When the hour arrived to which the hearing had been adjourned, the solicitors of the parties again came before the judge. In opposition to the application, Messrs. Hillyer & Whitman presented the affidavit of Mr. Charles Bonner, drawn by them, of which the following is a copy:

"Affidavit of Charles Bonner: United States of America, in the Circuit Court of the United States for the District of Nevada. In Equity. Wm. B. Thornburgh, Complainant, v. The Savage Mining Company, Defendant. In the matter of the application of the complainant for an order of survey. Before Justice Baldwin, sitting in chambers. Now comes Chas. Bonner, superintendent of the defendant, the Savage Mining Company, and having charge of its litigation in the state of Nevada, and, being first duly sworn, deposes and says that he is informed and believes, and so charges the truth to be, that Wm. B. Thornburgh, complainant above named, is not the real party in interest in the premises he seeks to recover; that he is not the owner thereof; that he paid no consideration therefor; that the same have been transferred to him; that, being the nominal and apparent legal owner, he might bring suit, as he hath done, before the circuit court in and for the district of Nevada; that defendant desires to make issue with said complainant upon such point of ownership, in order to test the truth thereof, and to compel a dismissal of this suit in event the fact be according to the information of the defendant; that for such purpose affiant desires to proceed by bill of discovery, plea to the jurisdiction of said court, or application for injunction in equity, as he may be advised, after full, fair, and free statement of defendant's case to its counsel, and under their advice; that notice of this application was given to defendant at nine (9) o'clock p. m. of the twenty-fourth instant. and not before; that the papers in the suit to which this application is auxiliary were served on the defendant on the twenty-third instant, and copies thereof transmitted by affiant to San Francisco so soon as they could be prepared; that defendant hath twenty days from the service of said papers, exclusive of the day thereof and of Sundays, within which to appear in such causes; that the principal counsel of defendant reside in San Francisco, and that it is necessary, for the proper appearance and defence of defendant, that they should be consulted before the defendant takes any definite action in the premises; that to decide upon the course of defendant's action will take more time than is allowed for the hearing of this motion, which is set for four p. m. this day, instant; that to make the order asked by complainant, or any order of such nature, would inflict upon defendant great hardship, inconvenience, and expense, namely an expense of not less than five hundred dollars per day; that such order should not be made unless the complainant hath the right of action in the suits referred to; and that defendant should be allowed a reasonable time to appear in such suit, and be heard therein upon the preliminary question of complainant's rights, before he is required to respond to this motion, or before the same is granted.

"To the end, therefore, that defendant may have opportunity to test complainant's real character and position with regard to the property in controversy, defendant asks that the hearing of the motion be postponed for such time as may be reasonable for the ascertainment of such fact, and until proof touching the same can be heard. Affiant further shows that he is a practical miner, and has been engaged in such business for twelve years last past; that for four years last he has been engaged in such business in the county of Storey, state of Nevada; that he is well acquainted with the works of the mine of defendant. and the developments therein; that there is no other lode than the Comstock lode therein, and that defendant is not now working upon or extracting ore from any lode or lead of mineral-bearing rock other than the Comstock; that neither complainant nor his predecessors in interest, nor the locators of the 'Mitchell Lode,' so called, or any other person or persons, have ever done any work or made any explorations upon said Mitchell lode, or in search therefor, within the boundaries of defendant's mining claim. or within the boundaries, set forth in complainant's complaint, as affiant is informed and believes; that defendant hath had open, notorious, exclusive, and uninterrupted possession, custody. and control of the place where it is now working, and of all places where it has done work, adverse to all the world, for more than three years last past; that all the work done by defendant is laid down upon maps drawn by competent surveyors, which heretofore

have been kept in the office of the company, open to public inspection, as complainant well knows; that from time to time during the last year many persons have visited the workings of the defendant, and there has been no concealment thereabout; that complainant could have visited the same at any time prior to the commencement of this suit, had he so desired, as he well knows; that affiant is informed and believes, and so charges the truth to be, that the object of complainant in seeking this order is to annoy and harass the defendant, to hinder its workings, or for some other object or purpose contrary to equity and good conscience. Charles Bonner.

"Subscribed and sworn to before me, this the 25th day of January, 1867. Alex. W. Baldwin, United States Judge."

Endorsed: "Filed February 2d, 1867. Silas Caulkins, Clerk."

The complainant's solicitors were then given until seven o'clock to procure rebutting testimony. At this hour the parties again came before the judge, and the complainant's solicitors presented his affidavit, traversing most of the statements in that of Mr. Bonner. The argument then proceeded—

Mr. Mesick, for the complainant, urging the judge to grant the order.

Mr. Hillyer, for the defendant, resisting it.

The argument concluded, the judge took the matter under advisement, and the next day decided that the plaintiff was entitled to the order of inspection and survey, in the form applied for, and ordered it to issue in the action. The order was served upon the solicitors and superintendent of the defendant, and for three days it was obeyed. On the twenty-sixth day of January the Savage Mining Company, by Hillyer & Whitman, its solicitors, filed in this court its bill against William B. Thornburgh, of which the following is a copy:

"United States of America, in the Circuit Court of the United States for the District of Nevada. In Equity. The Savage Mining Company, Complainant, v. Wm. B. Thornburgh, Defendant. To the Honorable the Judges of the Circuit Court of the United States for the District of Nevada: Your orator, the Savage Mining Company, shows to this honorable court that it is a corporation, incorporated in the state of California and under the laws thereof, and having its principal place of business in said state, and is a citizen thereof; that William B. Thornburgh, the defendant, is a citizen of the state of Nevada. Your orator further shows that it is now, and for five years last past has been, the owner, entitled to the possession, and in the possession, of a certain mining claim and quartz lode situate in the county of Storey, said state, known as the 'Savage Claim,' and described as follows: 'Eight hundred (800) feet in length upon the quartz lode, commonly known as the "Comstock Lode," bounded on the north by the Gould & Curry claims, and on the south by the Hale & Norcross claim, and including all the dips, angles, and spurs of said lode between said north and south boundaries.' Your orator further shows that on the 23d day of this month the defendant, Wm. B. Thornburgh, commenced an action in this honorable court against this complainant, the nature of which action fully appears from the complaint therein, a copy of which is hereto attached, marked 'Exhibit A.' Your orator further shows, upon information and belief, and avers the fact to be, that the said Wm. B. Thornburgh is not in fact the real owner of the property described in said complaint, nor the real party in interest in said action; but that the real parties in interest as complainant in said action are other parties, whose names are unknown to this complainant, and who are citizens of California, and not of the state of Nevada. Your orator further shows, upon information and belief, and avers the fact to be, that shortly before the commencing of said action the real parties in interest as complainant in the same, and the only parties besides this complainant owning, or making claim of ownership to, said property, for the fraudulent purpose of enabling said actions to be commenced in a court of the United States, and for no other purpose, executed, or procured to be executed, to said Thornburgh a conveyance or conveyances of the said property by deed or deeds of conveyance purporting on their face to convey the title to said property, but which in fact were merely colorable, and made, not to convey any real interest in the same, but solely to invest said defendant with a nominal title, in order that the action against the complainant might be brought in the federal court, instead of being brought in the court of a state. Your orator further shows, that it is desirous of contesting the jurisdiction of the said honorable court in said action, and procuring a dismissal of the same, upon the ground that the real parties in interest in the same are not citizens of different states, as therein alleged, which fact would appear if the said Wm. B. Thornburgh would discover and set forth the real condition of the title to said property upon which he bases his right to recover therein, and that for the proof of said facts a discovery by the said defendant, in the manner herein prayed for, is material and essential to this complainant.

"In consideration whereof, and forasmuch as your orator is remediless in the premises at common law, and cannot have a complete discovery of the condition of said title without the aid of this honorable court, and to the end that said Wm. B. Thornburgh may, upon his corporal oath, full, true, direct, and perfect answer make to all and singular the matters and charges aforesaid, and that not

only to the best of his knowledge and remembrance, but also the best of his information and belief, particularly that the said defendant may discover and set forth in manner aforesaid:

"First. Whether he is in fact the real and true owner of the said property upon which the right to recover in said action is based in said complaint, and whether other parties, and, if so, what parties, are the real equitable and beneficial owners of the same.

"Second. Whether he, the defendant, is the sole beneficial owner of the said property and title, and whether other parties are not legally or beneficially interested in the same, and, if so, what parties, what is the extent and character of their interest, and what is their place of residence.

"Third. At what time, place, from whom, and by what means, the said defendant obtained the title which he sets forth and relies upon in said action.

"Fourth. What was the consideration, if any, paid by the defendant for said title, and when, where, and under what circumstances was the same paid.

"Fifth. What were the negotiations which took place in reference to the obtaining of said title by defendant, and with whom said negotiations were made, who were present at the time the said negotiations were conducted, and what conversation was then or previously had in the presence of defendant in reference to the object of making a transfer to said defendant, and in reference to the beneficial interest in the said property which should be had by the defendant or by other parties.

"Sixth. Whether said defendant has in his possession or control, or knows of the existence of, a certain deed from one Charles Lintott to one Thomas Farrel, purporting to convey the title to said property, and, if so, whether defendant has any knowledge or belief, and, if so, what, as to the real consideration of said deed, and as to the purpose and objects for which the same was paid.

"Seventh. Whether said Thomas Farrel made a conveyance of said title to defendant, and, if so, at what time and place it was made, and who were then present, and what then, or in that conversation, was said to or in the presence of defendant in reference to the objects and purposes of said conveyance.

"Eighth. Whether the consideration mentioned in said deed from Farrel to defendant was ever paid, or any part of the same, and, if so, at what time, place, and to whom.

"Ninth. Whether the defendant has not made a contract with one or more persons, either written or verbal, by which said other persons bear the whole or some portion of the expense of litigating said action, or the purchase of said title, or are to have an interest in said property, or in the benefits accruing from the litigation of the same with this complainant, and, if so, what is such contract, and when and with whom was it made.

"Tenth. Whether one C. L. Low is not, to the knowledge or belief of the defendant, a real party in interest in said title to said property and in said litigation, and, if so, the character and extent of said interest, and when and how acquired, and of what state the said Low is a citizen.

"Eleventh. Whether it was not stated or understood, either at the time of taking the conveyance from said Farrel, or during the negotiations for the same, that the real object of making the same was to enable the said action to be brought in the circuit court of the United States for the state of Nevada.

"And that the said Wm. B. Thornburgh may make a full and true disclosure and discovery of the several matters aforesaid, to the end that your orator may be better enabled to show the want of jurisdiction by this honorable court of said action, and that in the meantime, and until the said Thornburgh shall have made such discovery, as aforesaid, that he may be restrained by the order and injunction of this honorable court from further proceedings in the said action and all others therein.

"May it please your honors to grant your orator not only the most gracious writ of injunction issuing out of this honorable court, according to the form of the statute in such case made and provided, and under the seal of this honorable court to be directed to the said Wm. B. Thornburgh, restraining him, his servants, agents, attorneys, and every of them, from proceeding further in said action, or under any order made in the same, but also a writ of subpoena of the United States of America to be directed by the said Wm. B. Thornburgh, thereby commanding him at a certain day, and under a certain pain, therein to be specified, personally to be and appear before your honors in this honorable court, and then to answer, all and singular, the premises and to stand to, perform, and abide such order therein as to your honors shall seem meet; and your orator shall ever pray, and complainant prays, for such other relief as may to your honors seem proper. Hillyer & Whitman, Solicitors for Complainant."

"United States of America, State of Nevada, County of Storey—ss.: Charles Bonner, being first duly sworn, deposes and says that he is the superintendent and general managing agent of the Savage Mining Company, the complainant in the above-entitled action; that he has heard read over the foregoing bill of complaint, and knows the contents thereof; that the same is true of his own knowledge, except as to matters therein stated on information and belief, and that as to those matters he believes it to be true. Charles Bonner.

"Subscribed and sworn to before me, this 26th day of January, A. D. 1861. S. H. Rob-

inson, U. S. Commissioner, Nevada district, Nevada."

Appended to and made a part of this cross bill was the original bill in the action. The cross bill was by the solicitors of the Savage Company presented to one of the judges of this court, and an injunction in accordance with its terms asked for. This was denied. Then for the first time the Savage Mining Company closed its works, and, in disobedience of the order of survey, denied admittance to the complainant and his attendants. The corporation, also Mr. Bonner, the superintendent and general managing agent, were cited to appear before the court, and show cause why they should not be punished for contempt, and, while the former made no appearance, the superintendent undertook to purge himself, on the grounds that he was acting under the advice of counsel, and that in their and his estimation the order of survey was void, because this court at the time of granting it had not acquired jurisdiction of the person of the defendant.

The court held that it had acquired jurisdiction, adjudged Mr. Bonner, the superintendent, guilty of the contempt charged, and imposed upon him a fine.

The court also adjudged the corporation, the Savage Mining Company, to be in contempt, and, for the purpose of compelling obedience to its authority, ordered a writ of distringas to issue against the property. For the purpose of preventing the execution of this writ by the marshal of the United States, the defendant invoked the authority of a state court, but the tribunal appeared to decline to interfere.

On Tuesday, the 15th day of February, this court convened at Carson City. The complainant exhibited his rule to show cause on the injunction, properly served upon the superintendent and general agent of the corporation, defendant, and upon its solicitors, Hillyer & Whitman, and moved for an injunction thereon. Pending the determination of this motion, Mr. Hillyer obtained leave to make a special appearance, and submit a motion to quash all proceedings in the action, on the grounds—First, that the court has no jurisdiction of the case; second, that the court has no jurisdiction of the person of the defendant; third, that no service has ever been had on the defendant; fourth, that no service can be had on the defendant. This motion was by the court overruled, and complainant renewed his motion for an injunction. As Mr. Hillyer, the generally retained solicitor of the defendant, was present, the judge desired to know if he wished to make any resistance to the granting of the injunction, intimating that time and opportunity for a trial upon the merits would be offered, to which it was responded in the negative, unless the court would permit the defendant to contest the application for an injunction without holding it to a general appearance in the action. Inasmuch as the sole object of the action was to obtain an injunction, it was not competent for the court to allow that object to be resisted by the defendant, without being committed to a general appearance in the cause. Besides, the court had already distinctly held that the defendant had generally appeared. The complainant renewed his motion for the injunction and the court ordered it to issue in the form prayed for.

The foregoing statement comprises the facts which up to this period have occurred in this case. The propositions of law which they involve are:

First. Ought a court of equity, in a mining case, when it has been convicted of the importance thereof, for the purposes of the trial, to compel an inspection and survey of the works of the parties, and admittance thereto, by means of the appliances in use at the mine? All the analogies of equity jurisprudence favor the affirmation of this proposition. The very great powers with which a court of chancery is clothed were given it to enable it to carry out the administration of nicer and more perfect justice than is attainable in a court of law. That a court of equity, having jurisdiction of the subject matter of the action, has the power to enforce an order of this kind, will not be denied; and the propriety of exercising that power would seem to be clear, indeed, in a case where, without it, the trial would be a silly farce. Take as an illustration the case at bar. It is notorious that the facts by which this controversy must be determined cannot be discovered, except by an inspection of works in the possession of defendant, accessible only by means of a deep shaft and machinery operated by it. It would be a denial of justice, and utterly subversive of the objects for which courts were created, for them to refuse to exert their power for the elucidation of the very truth of the issue between the parties. Can a court justly decide a cause without knowing the facts? But one adjudication of this subject can be found in the books, and this is in conformity with the views here expressed, viz. Bainb. Mines. Of course, before granting an order of this kind, the court must be satisfied that the application is made in good faith, and in granting it will pay due regard to the convenience of the party affected.

The next question in this case, and the most important one which has occurred, is as to the jurisdiction of this court over the person of the defendant. Has this court acquired such jurisdiction? The negative of this proposition has been vehemently urged by the defendant's counsel. This is conceived to be a fair statement of their position: They submit—First, that the judicial act of 1789 [1 Stat. 73] provides that no suit shall be brought against an inhabitant of the United States by original process in any other district than that whereof he is an inhabit-

ant, or in which he shall be found at the time of serving the writ; second, that the defendant is a corporation, organized under the laws of the state of California, and that it cannot exist or be found beyond the limits of that sovereignty. While this court is of opinion that the defendant was, within the meaning of the foregoing provision of the judicial act, found in this district at the time process was served, even if such were not the case, the court, by defendant's voluntary appearance, had acquired jurisdiction before the want of it was suggested.

Judge Conkling, in his treatise on United States Courts (page 127), in discussing the provision under consideration, holds it not to be restrictive of the jurisdiction of the court, but, taken together, merely to import that process for the institution of a suit at law or in equity shall not run beyond the limit of the district for which the court from which it issues is held. The author, continuing, says: "This prohibition, as already intimated, has been adjudged not to amount to a denial of jurisdiction over causes otherwise in themselves cognizable in the national courts, but only to a privilege given to the defendant; of which, however, he must avail himself at the outset, or he will be held to have waived it." An appearance, therefore, by a defendant, and answering, generally, without objection, has always been considered to be a waiver. In Gracie v. Palmer, 8 Wheat. [21 U. S.] 699, the court say: "It is not necessary to aver, on the record, that the defendant in the circuit court was an inhabitant of the district, or was found therein, at the time of serving the writ. Where the defendant appears, without taking the exception, it is an admission of the regularity of the service." This is the tenor of all authorities, nor, indeed, has their effect been disputed by any counsel in this case.

Prior to the taking of any exception to the jurisdiction of the court, the defendant, in response to a rule to show cause, addressed to it, why an order in the action should not be allowed, had, by generally retained counsel, solicitor of the court, appeared before the judge, and in opposition to the order, introduced testimony and made argument. From the very testimony introduced, the affidavit of Mr. Bonner, drawn by the solicitors, it appears that the defendant had been served and proposed to answer. Does this not show a voluntary submission to the authority of the court?

The order of survey was evidently regarded by this defendant as an important step in the litigation. It was strenuously resisted. Not only was this jurisdictional exception not suggested then, but, all opposition to the granting of the order having been found ineffectual, the authority of the court was recognized and admitted by obedience to it. Does this not indicate that the defendant waived his privilege to hold itself beyond access by the process of this court? The de-

fendant could very easily have found means to suggest to the judge the fact of its residence beyond the reach of his process, and the consequent impropriety of allowing the action to proceed against it. But it rather chose to appear before him, and contest the order on its merits. That appearance was general, and, for every purpose of the action, is manifest from the fact that it was unreserved and unrestricted by any limitation. A voluntary appearance by a defendant consists in his submitting himself to the authority of the court, and the manner of entering it is usually regulated by rule. But it by no means follows that a party may not be held to appear in an action without formally complying with such rule. See 1 Barb. Ch. Prac. 77, 82, 87. In Tallman v. McCarty, 11 Wis. 401, it was held that making a motion in a case was an appearance. In Cooley v. Lawrence, 5 Duer, 605, the court, after reviewing the authorities, says: "All the authorities show that the question is whether the appearance of the defendant has been an act importing that he submits the determination of a material question of this case to the judgment of the court." Asking for a continuance in a cause is held in Iowa to be a full appearance. Hotchkiss v. Thompson, Morris [Iowa] 156; Ulmer v. Hiatt, 4 G. Greene, 439; H. 382; H. 441. Also, that moving to suppress depositions, or to call into action the power of the court for any purpose, except to pass upon its jurisdiction, is an appearance. See, also, 4 Cal. 304, 306. But in this action the defendant has actually appeared upon the record, for its cross bill, which has been set forth in this opinion, is to all legal intent an answer in this cause. Says Daniell, in his Chancery Pleading and Practice (volume 2, p. 1649): "A cross bill is a mode of defense. The original bill and the cross bill are but one cause. If a cross bill be taken as confessed, it may be used as evidence against the plaintiff in the original suit, on the hearing, and will have the same effect as if he had admitted the same facts in an answer. To sustain the doctrine of the text the author cites many respectable authorities. In Cockrell v. Warner, 14 Ark. 346 (quoted in note to Daniell, Ch. Pl. Prac. 1549), it was held that, when a defendant files a cross bill on matters clearly cognizable in equity, the cross bill will supply any defect in jurisdiction, and place the whole cause before the court, and impose the duty of granting relief to the party entitled. 2 Cart. 90; 2 Barb. Ch. 127, 136; Story, Eq. Pl. 389, 390.

It is the opinion of this court that it acquired jurisdiction of the person of the defendant by virtue of the service of the subpœna upon its superintendent and general managing agent. In other words, that by such service the defendant was found in this district, within the meaning of the judicial act of 1789. The force of the argument of defendant's counsel, based upon a literal

and rigid construction of the language of that statute and of the constitution, is candidly admitted. But the supreme court of the United States has not so construed. If it had done so, in no case could a corporation be a party to a suit in the national courts.

The constitution of the United States limits the jurisdiction of the federal courts, so far as respects the character of the parties in this particular case, "to controversies between citizens of different states." That a corporation can in any sense be considered a citizen no one has ever claimed. That a corporation is a unity, independent of and distinct from the individuals who have created it, and who are interested in it, is equally well settled. "That in a corporation all the parties are not the whole is not only true of its conduct or administration; it is also true of its rights of property. They are referred, not to all the members, but entire and undivided to the judicial person, as a unity in law." Hence, for the purpose of a suit, the corporation must appear by its constitutional organs or curators; the appearance of each and every member is no appearance at all. Bro. Corporation, 28; Co. Litt. 66b.

Notwithstanding this definition and perfectly established legal status of a corporation, and of its relations to its members, the supreme court, in the leading case of Bank v. Deveaux, 5 Cranch [9 U. S.] 61, and in all subsequent decisions involving the question, has held that federal courts will look beyond the charter, to see whether the individual members are citizens, to have right under the constitution to sue in those courts; and the court has so decided in all of these cases, as will appear from any analysis of them, for the purpose of advancing the remedy in the national tribunals, and preventing a failure of justice therein, and for no other purpose.

It is a matter of regret that the briefs of the eminent counsel in Bank v. Deveaux are not contained in the report of that case; but we are told, upon the authority of a contemporary (Attorney-General Legare), that their great argument there was "that a corporation, not being a citizen of a state under the constitution, if the court did not look beyond the charter, to the individuals who composed the company, there would be a denial of justice in a great number of the most important cases." And, indeed, that it was this view which controlled the decision is sufficiently evident from the language of the great judge who delivered the opinion. Says Chief Justice Marshall: "The duties of this court to exercise jurisdiction where it is conferred, and not to usurp it where it is not conferred, are of equal obligation. The constitution, therefore, and the law, are to be expounded without a leaning the one way or the other, according to those general principles which usually govern in

the construction of fundamental or other laws."

A constitution, from its nature, deals in generalities, not in details. Its framers cannot perceive minute distinctions which arise in the progress of the nation, and therefore confine it to the establishment of broad and general principles. The judicial department was introduced into the American constitution under impressions and with views which are too apparent not to be perceived by all. However true the fact may be that the tribunals of the states will administer justice as impartially as those of the nation to parties of every description, it is not less true that the constitution itself either entertains apprehensions on this subject, or views with such indulgence the possible fears and apprehensions of suitors, that it has established national tribunals for the decision of controversies between aliens and citizens of different states. Aliens or citizens of different states are not less susceptible of these apprehensions, or can they be supposed to be less the objects of constitutional provision, because they are allowed to sue by a corporate name. That name, indeed, cannot be an alien or a citizen, but the person whom it represents may be the one or the other, and the controversy is, in fact and in law, between those persons suing in their corporate character, by their corporate name, for a corporate right, and the individual against whom the suit may be instituted. Substantially and essentially, the parties in such a case, where the members of a corporation are aliens or citizens of a different state, from the opposite party, come within the spirit and terms of the jurisdiction conferred by the constitution on the national tribunals.

In Marshall v. Baltimore & O. R. Co., 16 How. [57 U. S.] 326, it is said by Mr. Justice Grier: "By the constitution the jurisdiction of the courts of the United States is declared to extend, inter alia, to controversies between citizens of different states." The judiciary act confers on the circuit courts jurisdiction "in suits between a citizen of the state where the suit is brought and a citizen of another state." 1 Stat. 78. The reasons for conferring this jurisdiction on the courts of the United States are thus correctly stated by a contemporary writer (Federalist, No. 80): "It may be esteemed as the basis of the Union 'that the citizens of each state shall be entitled to all the privileges and immunities of the citizens of the several states.' And if it be a just principle that every government ought to possess the means of executing its own provisions by its own authority, it will follow that, in order to the inviolable maintenance of that equality of privileges and immunities, the national judiciary ought to preside in all cases in which one state or its citizens are opposed to another state or its citizens."

These authorities are considered sufficient, although more might be cited, to show the length to which the supreme court has felt justified in going, in order to effectuate the substantial guaranties of the constitution, so far as access to the national courts was concerned. To secure the remedy to these tribunals, it has divested a corporation of its cardinal and essential characteristic,—perfect ideal unity. Conformably with the reasons and principles which have influenced the supreme court in the cases cited, it is believed that the process of this court can reach the defendant, that it may be "found" within this district.

The Savage Mining Company is a corporation organized under the laws of California. The purpose and object of its organization, as declared in its charter, is mining in the state of Nevada. Its property, consisting of a mining claim, mills, etc., is all situated in this state. Through a superintendent and general managing agent, resident here, it holds possession of its property, makes contracts, and carries on a general and extensive business. If the defendant cannot be reached by the process of this court, there is an utter failure and denial of justice; for the property in controversy being situated within the state, and the distinction between local and transitory actions having always been recognized in the federal courts, none could be maintained in the district of California. Conk. Prac. p. 172.

Thus, while the corporation, by a strained construction of the constitution in its favor, is allowed free access to the national courts, the citizen, by a forced and narrow construction of the judicial act, is denied all redress. Surely the courts will not, when, for the purpose of advancing the remedy and doing justice, they have opened their doors to corporations, invest them in this way with absolute immunity from legal procedure. Much more reasonable is it to hold that a corporation is "found," where it transacts its business through an officer having general charge thereof, where its property is situated, which may be taken on execution, where it makes its contracts, which are liable to be litigated. Indeed, if language is to be construed as literally as counsel insist, a corporation can be "found" nowhere. It is a metaphysical entity, no more susceptible of being handled, seen, or corporally touched, than a will-o'-the-wisp. How could this corporation be "found" in the district of California? If it be answered by service upon some officer thereof, as authorized by the statutes of that state, still there would be no compliance with the literal meaning of the judicial act, nor could a judgment obtained upon such service, however binding upon the person of the corporation, ever be enforced, because its property is all situated within another jurisdiction. So that, it being actually and physically impossible to find a corporation anywhere, the question is, what will the courts, animated by a desire to advance the remedy and do justice, consider a "finding" of a corporation? If it be by legal fiction that the corporation be found at all, it would certainly seem just and reasonable that it would be found in some jurisdiction where judgment against it may be enforced. If the position taken by defendant's counsel be correct, a corporation, by having its officers in one state, and all its property in another, could escape amenability to the process of all courts.

The thirteenth section of the attachment law of New Hampshire provides that, "when any corporation or body politic within this state shall be possessed of any money," etc. The supreme court of that state, in 9 N. H. 397, held that this clause of the statute was not confined to corporations created by the laws of that state, but included any corporation having property there or suable there. The clearness and force which characterizes the opinion in that case, and its general application to the question under consideration here, justify an extended quotation from it:

"Wilcox, J. This case involves the inquiry whether a foreign corporation can be sued in this state. It has been held in Massachusetts (Peckham v. Inhabitants of North Parish in Haverhill, 16 Pick. 286) that a foreign corporation cannot be sued in that state. Such, also, seems to be the doctrine in New York. M'Queen v. Middletown Manuf'g Co., 16 Johns. 5. The only reason given for these decisions is that no writ can by their laws be legally served against a corporation in another state. Such process, it is said, must be served on its head or principal officers within the jurisdiction of the sovereignty where this artificial body exists; and 'if the president of a bank of another state were to come into New York, his functions would not accompany him when he moved beyond the jurisdiction of the government under whose laws he derived his character.' The question has been adjudged in favor of the liability of a foreign corporation in Pennsylvania. Bushel v. Commonwealth Ins. Co., 15 Serg. & R. 176. It has often been held that a corporation may sustain a suit beyond the jurisdiction within which it was constituted. A Dutch corporation was allowed to sue in England (Dutch West India Co. v. Van Moyses, 2 Ld. Raym. 1535; 1 Strange, 612), and the same doctrine has been held more recently in regard to foreign corporations (Chit. Cont. 86; 1 Russ. & M. 190). See, also, 2 Rand. (Va.) 465; 10 Mass. 91; 4 Johns. Ch. 370; 6 Cow. 46; 17 Mass. 97. We have, also, recognized the right of a foreign corporation to hold estate, real and personal, within this state. Lumbard v. Aldrich, 8 N. H. 31.

"There is 'nothing in the character of a corporation to prevent its suing or being sued like a natural person. It is, in legal contemplation, a person having existence, invested with rights and subjected to liabilities, and very properly a party to proceedings in courts of law or equity, whenever

those rights or liabilities are drawn in controversy.' And if, upon principles of law and comity, corporations created in one jurisdiction are allowed to hold property and maintain suits in another, it would be strange indeed if they should not also be liable to be sued in the same jurisdiction. If we recognize their existence for the one purpose, we must also for the other. If we admit and vindicate their rights, even-handed justice requires that we also enforce their liabilities, and not send our citizens to a foreign jurisdiction in quest of redress for injuries committed here. There may be difficulties in procuring legal service of a writ upon a foreign corporation; and so, in case of an individual residing in a foreign jurisdiction, it may be difficult or impossible to procure such service of process upon him as to subject him to the jurisdiction of our courts. But in either case, when the service can be made, or when the person or corporation appears, and submits to our jurisdiction, we see no objection to the authority of the court to proceed. If a citizen of another state is found here, and process is served on him personally, that gives the court jurisdiction. It may well be doubted, however, whether the casual presence of the principal officer of a foreign corporation here, and service upon him, would be sufficient. But if the corporation have estate here, or if it send its officer, upon whom, by our law, process is to be served, to reside here, and transact business upon its account, we cannot see why an attachment of such estate, or service upon such officer, may not be sufficient. The same difficulty in regard to the service of a writ does not exist here as is found in Massachusetts and New York. Our state laws (87) provide: 'That, when any body, politic or corporate, are sued in this state, who have no clerk or member residing therein on whom service can be made, an attested copy of the writ shall be delivered to the agent, overseer, or person having the care or control of the corporate property, or part thereof, in this state.' It is objected that the thirteenth section of the act, directing proceedings against trustees of debtors, does not extend to foreign corporations. That section provides that, 'when any corporation or body politic within this state shall be possessed of any money,' etc. We are of opinion that this clause of the statute is not confined to corporations erected by the laws of this state, but that any corporation having any property here is, within the meaning of this statute, a 'body politic within this state.' "

The whole stress of defendant's position rests upon the assertion that it cannot exist beyond the boundaries of the sovereignty which created it; and authorities are cited in support of this proposition, which it is not deemed necessary to dispute. In view of the appalling consequences which might ensue therefrom, this court will hesitate long before it decides that a corporation can exercise no powers beyond the state which charters it. Indeed that it may do so is expressly decided in the case of Bank of Augusta v. Earle [13 Pet. (38 U. S.) 519]. If the corporation exercise powers in this state, it must do so through an officer or agent. If this officer or agent be competent to represent the corporation here in making contracts and holding property, why may he not be said to represent it when the enforcement of its liabilities is sought? Especially when it is considered that a corporation is at best a myth, can be literally found nowhere, cannot, in the case of a local action, be prosecuted to judgment where chartered, and that, even if it could be, the judgment could never be enforced against it. The defendant makes contracts here. It practically enjoys all of the privileges which could be enjoyed by a natural person, inhabitant here. All this it does by the permission of this state, and through the agency of an officer resident here, who is invested with plenary powers. In other words, under the decision of Bank of Augusta v. Earle, the defendant, though a resident in another sovereignty, may, through its agents, hold property and make contracts here, provided this state acquiesce in so doing. Inasmuch as this state does, by acquiescence, accord to the defendant these great privileges, by every principle of equity, upon the occurrence of litigation growing out of the exercise of these privileges, it should be stopped from asserting that it cannot be found within the state.

Yet another reason for holding the service as made to be effectual upon the defendant consists in the fact that this court has by rule adopted the civil practice act of this state. By section 29 of the act, to regulate proceedings in civil cases (page 318, St. Nev. 1861), it is provided that the summons in an action may be served upon a corporation by delivering a copy thereof to its superintendent or general managing agent. In Conk. Prac. (page 81), the author says: "It is proper, however, here to observe that there is one description of cases attended by circumstances so peculiar as to have been deemed sufficient to warrant a departure in practice from the strict letter of this enactment. When a party residing out of the jurisdiction of the court has obtained a judgment at law, which is sought to be enjoined by bill in equity filed by defendant in judgment on the equity side of the court, or, where a nonresident has instituted a suit in equity, and a cross bill is filed by the defendant, in such suit, the court, upon motion, will order that a service of the subpoena upon the attorney or solicitor of such nonresident party shall be sufficient." Hitner v. Suckley [Case No. 6,543]; Eckert v. Bauert [Id. 4,266]; Ward v. Seabry [Id. 17,161]; Read v. Consequa [Id. 11,606].

An examination of the case referred to and considered as authority for the text shows clearly enough that the court predi-

cated the validity of a service upon the solicitor of a party, neither found within nor an inhabitant of the district, upon its adoption of the rules of English chancery practice. Thus have the federal courts kept step with the progress of the age. In order to preserve the substantial guaranty of the constitution, and to prevent a denial of justice, they have enlarged its terms and gone beyond its letter. They have not permitted that important category of cases which embraces corporations to be excluded from their jurisdiction by attaching to the word "citizen" any restricted significance. For the same reasons, 'and to accomplish the same end, they have, as has been seen, departed from the letter of the limitation imposed by the judicial act. They have frequently repudiated the fact of the state courts being open to suitors as affording any argument against their exercising, in behalf of such as preferred their tribunals, a not expressly warranted jurisdiction.

In conformity with these principles, a stronger case than the one at bar for the exercise of the jurisdiction of this court cannot easily be conceived.

The case of Day v. Newark India Rubber Manuf'g Co. [Case No. 3,685], relied on by the defendant's counsel, is not considered in point, for these reasons: First. The service in that case was upon an officer of a corporation, who casually came within the jurisdiction of the state of New York. Second. The laws of the state of New York provided no means for serving process upon a nonresident corporation. Third. The action was transitory, and no failure of justice would occur in remitting the complainant to the circuit court for the district where the corporation resided. In such and every one of these essential respects that case diametrically differs from this.

The importance of the main question involved is, perhaps, a sufficient excuse for the length of this opinion. It only remains to be said that the calm and studious reflection which the preparation of it has involved has only served to strengthen and confirm my belief in the correctness of the rulings which have been made in the action.