Louis M. Gamble, Respondent, vs. The Jacksonville, Pensacola & Mobile Rail Road Company, Appellant.

Section 194 of the Code of Procedure, which provides that "in any action arising on contract, for the recovery of money only, the plaintiff may file with the clerk proof of personal service of the summons and complaint on one or more of the defendants, or of the summons according to the provisions of Section 81, and that no answer has been received; the clerk shall thereupon enter judgment for the amount mentioned in the summons against the defendant or defendants, or against one or more of several defendants, in the case provided for in Section 87," is not unconstitutional.

Appeal from the Circuit Court for Leon County, Second Judicial Circuit.

An action was brought in the usual form under the Code on drafts in favor of respondent drawn by the President and accepted by the Treasurer of appellant. Judgment was rendered by the clerk in vacation, under Section 194 of the Code, against the company for $432.00.

Counsel for appellant assign for error, " that the judgment in this cause, rendered in vacation by the clerk of the court below, is unconstitutional, unauthorized and void."

*Peeler & Raney* for Appellant.

We present but a single question, viz : Is a judgment by default, so rendered by the clerk in vacation, constitutional and valid ? We maintain that it is not.

The powers of the government of this State are distributed into legislative, executive and judicial, and no person belonging to one department shall exercise any of the functions appertaining to either of the others, &c. Constitution, Art. 3, 196.

The judicial power is vested in a Supreme Court, Circuit Courts, County Courts, and Justices of the Peace. Ib., Art. 6, Sec. 1, 202.

No other courts than those herein specified shall be organized in this State. Ib., Art. 6, Sec. 18, 205.

We have here not only an investiture of the *whole judicial power* in certain *specified courts*, but an inhibition against the establishment of any other courts. Even in the absence of this inhibition, it is questionable whether the Legislature could vest any portion of the judicial power elsewhere. Cooley's Con. Lim., 90, Note 1.

The rendition of a judgment is a judicial act, and requires the intervention and exercise of judicial power through the appropriate court having jurisdiction of the cause. However much the authorities may differ in their reasoning upon other branches of this case, they are all agreed on this point.

As will be seen by reference to some of the authorities which we will cite, it is questionable whether a judge, as distinguished from the *court in session*, can render a judgment.

Section 8 of Article 6 of our Constitution gives jurisdiction to the *Circuit Courts* in certain cases, and afterwards provides that " the *Circuit Courts* and the *Judges* thereof shall have power to issue writs," &c., thus making a distinction between the *court* and *judge*. The difference between the *court* and the *judge* is admirably enforced in an able opinion of Mr. Story in the case of U. S. vs. Clark, 1 Gallison, 499.

But this point, it may be properly urged, does not arise here, neither the *court* nor the *judge* having had anything to do with the judgment rendered in this case.

The Clerk of the Circuit Court being a mere ministerial officer, in whom, under the Constitution, no part of the judicial power is or can be vested, a judgment rendered by him, which is a judicial act, is absolutely null and void.

The following authorities, we think, will sustain us in our position : State ex rel. City of Rockford vs. Maynard, 14 Ill. 419 ; Chandler vs. Nash, 5 Michigan, 409 ; Kenne-

dy ex parte, 6 Eng. (Ark.) 598; Hall vs. Mark, 34 Ill. 358.

The last case is directly in point. It decides the precise question here as to the validity of a judgment entered by a clerk under a law similar to the provisions of the Code under which this judgment is entered, and the court, in an unanimous and able opinion, hold such judgments to be null and void.

We have sought for adjudications on both sides of the question, desiring to present it fairly and have but one case: Wells et al. vs. Morton, 10 Wis. 408.

In this case the court was divided, and we think the dissenting opinion shows clearly the law to be as held by the other courts.

*T. W. Brevard* for Respondent.

The objection taken to the judgment is that it was entered by the clerk in vacation, and in the absence of the judge.

It is claimed that the judgment being the end of suit, is a judicial determination of the matters of fact and law presented, and that as a consequence of this the entry of the judgment involves the exercise of judicial powers by the clerk, and that the judgment is void. We controvert the positions taken by the appellant. A judgment is the decision or sentence of the law given by the court or justice or other competent tribunal, as a result of the proceedings instituted therein for the redress of the injury. Bouvier's L. D. 1, 676.

The judgment is not the decision of the court, but the sentence of the law pronounced by the court. The premises of law and fact being admitted, the judgment follows as a necessary result. Where there is no issue, there can be no trial. The judge decides questions of law, the jury decide questions of fact.

But this judgment was entered where all the premises of

law and fact are admitted, and there was no issue. The act of the clerk, therefore, was ministerial, at a time when the court was deemed to be open for the purposes of the case. After the default, the case stood as after verdict.

Refer to Bouvier's L. D. 1, 676 ; 2 Tucker's Com. 238, 316, 275 ; Stephens on Pleadings, 110 ; 10 Wis. 470.

RANDALL, C. J., delivered the opinion of the court.

An action was brought in the usual form under the Code, by the respondent, upon a draft drawn upon the Treasurer by the President of the Railroad Company and duly accepted. Upon the expiration of the time to answer, the defendant failed to answer, and judgment was entered by the clerk, in vacation, pursuant to Section 197 of the Code. From this judgment the defendant appealed, and the single question presented is, whether a judgment so entered by the clerk in vacation is constitutional and valid ?

A judgment is defined in the books to be the decision or sentence of the law, pronounced or given by a court, upon the effect of proceedings instituted in or before the court.

At a very early day all the proceedings before the court were oral—the pleadings and the judgment or sentence—and the " court " was the judge who represented the king or the law. The plaintiff or complaining party " clamored " in open court, in person, against the defendant, who was brought in person before the judge to answer. The judgment pronounced by the judge against the defendant consigned him to prison, there to expiate the offence of being too poor to pay a sum of money, or of having trespassed upon the plaintiff's grass, but " in mercy " the defendant was discharged from duress upon his paying the sum or fine adjudged against him. If judgment went against the plaintiff, he was punished " for his false clamor." The progress of civilization has wrought great changes in the form as well as in the substance of civil jurisprudence, and now, with greater semblance of decency, the court is a depart-

ment, having its various officers of convenience, judges and juries, clerks and sheriffs. The pleadings and adjudications have become records; the stentorian voice of the judge is hushed to the mere scratch of a pen, and the gentlemanly clerk quietly attests the seal of authority which consigns the unfortunate suitor's goods and chattels to the auction block. And so the footprints of progress are discovered even in the chambers of Westminster.

By the terms of the Code, the clerk of the court is required to enter a judgment for the amount demanded, if the defendant, who has had personal service of the summons, fails to answer. Here two things required to be observed savor of judicial action, viz: a conclusion or judgment that service has been made, and that the defendant is in default, but the one is determined by reading the sheriff's return, and the other by the affidavit of the plaintiff's attorney, and both by the common rules of grammar. The only remaining fact to be ascertained is the amount due, which may be, by the simplest rules of arithmetic or the sworn statement of a party to an undisputed fact involving the exercise of no judicial discretion or black-letter principles. A sum of money being thus ascertained, *the law* directs that the clerk " enter judgment " in a book according to the recognized form. In all this, what is the necessity of a judge's presence? But it is said the idea of a *judgment* includes judicial power exercised by some one clothed with the necessary raiment, and that must be a person called a judge, because judges alone may exercise judicial authority, and therefore no judicial act may be done by a mere ministerial officer. This is the doctrine of the case cited by counsel for appellant, Hall vs. Marks, 34 Ill. 358. " The power to adjudge, determine and render a judgment is, beyond all question, a judicial act, and under this provision of the Constitution, [that no person being of one department shall exercise any power properly belonging to another department,] can only be done by a judicial officer. It belongs to that

department, and if exercised by either of the others, it is void." " The consideration of the facts, and the application of the law to those facts, and the conclusion deduced by the court from the law and the facts, constitute a judgment. The power to announce and have enforced this conclusion has been confided exclusively to the judiciary of our State government." * * " It would be a perversion of language to call a clerk of a court a judicial officer. He is attached to the judicial department, but is only a ministerial officer of a court. He is only the instrument the law has designated, for convenience and the dispatch of business, to record the determination and sentence of the court. Every order or judgment he can lawfully enter, is the judicial sentence of the court. He possesses no power to render a judgment, but only to enter it under the express or implied order of the judge in the exercise of judicial power." And so the court puts the case upon that provision of the Constitution which prohibits officers of one department of the government exercising any power properly belonging to another, and upon that ground concludes that a law authorizing the clerk to enter judgments by default in vacation was unconstitional and void. However correct may be the legal definition here given of judicial functions, I do not clearly see how the entry of a judgment of a court by the clerk of a court is the exercise by an officer of one department of government of the powers or duties pertaining to another department; and if it be considered in Illinois that the clerk of a court is an officer of some other than the judicial department of government, I see no escape from the conclusion that all the acts of the clerks of their courts done in connection with the judicial department are totally void, and no judgment or decree entered by a clerk of a court has any validity whatever, nor, according to the same logic, is any judicial writ issued by a clerk of any value.

The issuing of an attachment or an execution, is an exercise of and an enforcement of the law through judicial pow-

er. According to the logic of the case cited, these writs cannot be issued by the clerk, nor can they be issued by any other than a judge. They further say that "the case is not similar to, nor does it depend upon the power of the clerk to record a *judgment confessed* in vacation. This is done by express authority from the debtor," &c., but I again confess that I cannot see the power of the clerk in any different light in the one case or the other; for the entry of a judgment, involving a consideration of the premises, of the parties, of the cause of action, and of the amount, and considering the conclusive nature of a judgment, requires equally the operation of judicial power in either case, and if a clerk may not enter a judgment by default in vacation because he is of another department and thus prohibited by the Constitution, no act of the parties can avoid the effect of the inhibition.

If the entry of a judgment in one case is a judicial act, it is equally so in the other, and no consent of parties can invest the clerk with the necessary judicial character. In the case from Wisconsin, (10 Wis. 469,) in which this section of the Code was considered and the judgment entered by the clerk sustained, the court says, if it be true. that the Code attempts to transfer to the clerk a portion of the judicial power, "there can be no doubt these provisions are unconstitutional, and that judgments entered in pursuance of them are illegal and void;" but the court in that case sustained the judgment so entered by the clerk, upon the ground that the *court* is, in contemplation of the law, always present, and that the act of the clerk is but the act of the court. The practice of the courts in Great Britain ever since the system of written pleadings and proceedings were inaugurated, and in most of the American States, is cited as authority for the entering of judgments in vacation, with or without the actual presence of the judge. This practice has prevailed from the earliest period in the history of the States, and now prevails in the courts of the United States, the court being *con-*

*sidered open* upon certain " rule days," and judgments are taken whether the judge be present or not. In Virginia, New York and others of the elder States, it has always prevailed without question. Judgments of this character are of course subject to the supervisory control of the court or judge, and may be corrected or set aside like other proceedings of the court and its officers. I can discover nothing in the Constitution which prohibits the Legislature from making provision for the entering of judgments in vacation as well as in term time ; nor that prohibits the Legislature from authorizing a trial by the judge of the issues in any case in which a jury is not required, and the entry of judgment in pursuance thereof by the clerk.

And granting all that may be claimed as to the judicial action involved in the entry of judgments by the clerk in vacation, upon default, there is no provision of the Constitution of this State opposed to the vesting of the necessary power in the clerk of a court and making his action therein the act, *pro tanto*, of the court. The judicial power of the State is vested in certain courts, and the Constitution provides for the appointment of a judge for each circuit and a clerk of the court for each county. It does not specially vest the judicial function in the judge, nor in the clerk, and the one is equally an officer of the judicial department with the other. Looking to the common definition of these offices, we conclude that the judge ordinarily pronounces the law and the clerk makes the record. We ordinarily recognize the " court " in the actual presence of the judge and clerk, yet we all know that interlocutory judgments and orders which, in contemplation of law, are the judicial acts of the court, have from time immemorial been entered of record by attorneys, solicitors and clerks, when in fact there was no judge of the court in existence, the statutes and rules having prescribed and regulated such proceedings, and parties

have been deemed bound by them as by the action of the court itself.

The Constitution empowers " the courts " to issue the necessary judicial writs, such as the summons, subpœna, execution, &c., in aid of the jurisdiction of the courts, but probably no lawyer questions the authority of the Legislature to confer the exercise of this power upon the clerk, who acts for and in the name of the court. The court is always present, always in existence, and if the judge be present or absent, suitors besiege it with complaints and declarations, pleas and demurrers, and the clerk receives the parchment and makes the entry in the record as an officer of the judicial department. The office of Master in Chancery is judicial. Even the Master of the Rolls was Master in Chancery, and we recognize him as second only in dignity and power in his department in England. Yet he was a mere clerk or keeper of records, the chief of twelve, who, on account of the increase of business, were permitted to employ other clerks, and grew into importance as aids to the chancellor, finally emerged into judicial existence from the mere convenience of the chancellor. There is nothing alarming in the character of the acts authorized by Section 194 of the Code to be done by the clerk. There is no controversy, no issue to be decided by an arbiter. One who understands plain English language and the rudiments of arithmetic, may correctly execute the simple directions of the law, though he may never have heard of Puffendorff. The clerk, upon a default, which he may discover by consulting the files, records the conclusion of the law as it is clearly pronounced through the prescribed rules of the court. He is, in fact, directed by the court, through rules enacted by the Legislature or adopted by the court, to enter a judgment upon the happening of events necessarily coming within his knowledge, and practically his duty is merely ministerial or mechanical.

In my judgment, the law authorizing the clerk to enter judgments upon default in vacation, is not in conflict with

the Constitution of this State, and as the judgment in this case was so entered in conformity with the law, it should be affirmed.

The judgment is affirmed.

HART, J., delivered the following concurring opinion.

An action was brought under the Code of Procedure on drafts in favor of respondent drawn by the President on and accepted by the Treasurer of the appellant. Judgment was entered by the Clerk of the Circuit Court under section 194 of the Code, against the appellant, for $432.00.

The part of said section which applies is as follows :

" Judgment may be had, if the defendant fail to answer the complaint, as follows :  1.  In any action arising on contract for the recovery of money only, the plaintiffs may file with the clerk proof of personal service of the summons and complaint on one or more of the defendants, or of the summons according to the provisions of section 81, and that no answer has been received.   The clerk shall thereupon enter judgment for the amount mentioned in the summons against the defendant or defendants, or against one or more of several defendants in the cases provided for in section 87."

It is contended for the appellant that this section of the Code is unconstitutional, because it provides for the performance of a judicial act, involving several judicial determinations, by one who is not a judicial officer, and the Constitution is appealed to wherein in Sec. 1, Article VI, it declares that " the judicial power of the State shall be vested in a Supreme Court, Circuit Courts, County Courts, and Justices of the Peace."  In section eighteen of the same article, that " no other courts than those herein specified shall be organized in this State," and in article three, that " the powers of government of the State of Florida shall be divided into three departments, Legislative, Executive and Judicial ; and no person properly belonging to one of the departments shall exercise any functions appertaining to either of the others,

except in those cases expressly provided for in this Constitution." On the other side it is contended for the respondent that such acts are not necessarily judicial, within the true meaning of those parts of the Constitution, and are lawfully directed by the statute in question to be performed by the clerk.

In behalf of the appellant the case of " The State ex rel., city of Rockford vs. Maynard," 14 Ill., was cited as a leading case. There, as here, the constitution vested the judicial power of the State in one Supreme Court, in Circuit Courts, in County Courts and in Justices of the Peace, and it also provided for the election of the latter for four years. The Governor, as directed by statute, commissioned Maynard, elected mayor of the city for a year, a justice of the peace for one year from the date of his election as mayor. A suit was brought before him for a penalty for violation of a city ordinance requiring labor on streets or commutation in money, and judgment was rendered against defendant for penalty and costs. Maynard afterwards refused to issue execution, and the Supreme Court denied a petition for mandamus to compel him to do it, on the ground that he could not as mayor hold the office of justice of the peace, nor belong to any of the courts holding the judicial power of the State. He was some other official than a judge or other officer of any of those courts. Next the case of Chandler vs. Nash, 5 Mich., 409, in which, under similar constitutional provision, a statute giving undisputed judicial powers to a notary public was held to be unconstitutional. Next, ex parte Kennedy, 6 Eng., (Ark.) 598. There the jurisdiction of all matters of equity was by the constitution vested in the Circuit Court, and an injunction had been ordered by a Master in Chancery and issued by the clerk. A statute authorizing it was held to be unconstitutional. Next and most relied upon, the case of Hall vs. Marks, 34 Ill., 358, where the constitutional provisions are substantially the same, the statute the same, except in not appearing in this

report to authorize the clerk to enter judgment in vacation, but stating that judgment may be entered by him. The summons had fixed no time for answer, and there does not appear to have been any rule of court like ours from which could be fairly intended the presence and order of the court.

In behalf of the respondent was cited the case of Walls vs. Morton, 10 Wis., 470, where this very point is decided in favor of the constitutionality of the act, with an able dissenting opinion by Justice Paine. For respondent was also cited the practice in the United States District and Circuit Courts for the Northern District of Florida for many years.

The precedents nearly or precisely in point are few and divided. The constitutionality of the practice does not appear to have been much questioned, though prevailing in several States having similar constitutional provisions for many years. It prevails in England, where they are quite as careful in such matters as any pleople can be to keep the judicial department separate and independent. There can be no reasonable doubt that clerks of courts are officers of courts, created and their appointment provided for in, and some of their duties prescribed by, the Constitution itself, (see Art. VI, Sections 6, 17, 19, Art. XIV, Sec. 6,) and that they properly belong to the judicial department; that the judicial power of the State is vested in the courts, and that the Legislature has no authority to pass a statute in conflict with the true meaning of the Constitution.

The section of the Code in question is not the only one requiring the Clerk to enter judgments without the real presence and participation of the Judge. In cases of trials of facts by the courts, their decisions in writing may contain only statements of the facts found, must be filed with the clerks within a certain number of days after term, and then judgments upon the decisions are to be entered accordingly. See section 213. Who ascertains the amounts of the judgments? The Judges may or may not, and if not, the clerks

must, and they are intended as the judgments of the courts. In cases of judgments by confession, the Judges have nothing whatever to do with them. The examination of the papers in order to ascertain whether or not they come up to the requirements of the Code, in such cases made and provided, are made by the clerks, who thereupon enter up the judgments. Should a clerk discover that clearly the papers are not such as the statute requires him to enter up judgment upon, (and this would be scrutiny and consideration of the contents,) what might he lawfully do? Postpone his action until the papers should be corrected and then enter the judgment? It appears to be conceded that the statute authorizing the clerks of the courts thus to enter such judgments is constitutional, and they are judgments of the courts. It is entered up upon a direct confession, necessarily scrutinized and considered by the clerk. The judgment in question in this case was also entered upon a confession, though indirect, yet a virtual confession, *nil dicit.* If, in the one case, the proceeding was constitutional, and in the other not, the difference and the force of the reasoning for considering it so are not seen.

It is thought also that the thirty-seventh rule of the Circuit Courts, by providing that the courts are always open for such purposes, makes such judgments the acts of the courts.

True, arguments can be and have been made upon both sides of the question. Some tend to show the requirements of the Consitution to be a heavy and useless burthen upon the Judge, (who constitutes the court,) and others a reasonable mode of exercising his authority by one of his constitutional officers at a moment of his actual temporary absence, but constructive presence, a mere saving of time and trouble.

Such judgments may be said to be as much the acts of the courts as is the administering of oaths by clerks in recess to witnesses to testify before grand juries, the Judges being out of the court room; on the calling of the petit jury at midnight and receiving a sealed verdict, and the dispersing of

the jury, in court ordered to be kept open for that purpose, and the adjourning of the court, the Judge being asleep.

The experience of ages has recognized such judgments as being the acts of the courts, not universally, it is true, for human laws vary as much as men, their authors, do, but enough to prove that they may with satisfactory reason be held to be no substantial departure from constitutional authority for the Legislature to authorize them.

The judgment of the Circuit Court should be affirmed.