## UTAH ASSOCIATION OF CREDIT MEN v. BOWMAN, Judge, et al.

No. 2174. Decided January 13, 1911 (113 Pac. 63).

1. MANDAMUS—ACTION AGAINST OFFICER—DISCRETION. Though an official act may be quasi judicial or discretionary, if the discretion is qualified, and the refusal to perform the act is merely capricious, arbitrary, or wrongful, the officer may be coerced to perform the act by mandamus. (Page 331.)

2. CONSTITUTIONAL LAW—DEFAULT JUDGMENT—ENTRY BY CLERK—JUDICIAL POWERS. Comp. Laws 1907, sec. 3179, providing that in an action on contract for the recovery of money or damages only, if no answer, demurrer, or motion has been filed with the clerk of the court within the time specified in the summons or within such further time as may have been granted, and the complaint and proofs of service of summons shall have been filed, the clerk on application of the plaintiff must enter the defendant's default and immediately thereafter enter judgment for the amount specified in the complaint, including costs against the defendant, etc., is not unconstitutional as imposing judicial functions on a ministerial officer. (Page 332.)

3. MANDAMUS—DUTY TO ACT—DISCRETION. Where the law imposes a duty on an officer to act after determining that the condition or facts on which duty to act depends exists, and he finds or concedes that the condition is present or that the fact does exist, then he acts in obedience to the law imposing the duty, and his acts are ministerial and not discretionary or judicial.[1] (Page 332.)

4. JUDGMENT—"DEFAULT"—ADMISSIONS. A default on which a judgment may be rendered is an admission of every traversable allegation of the declaration or complaint necessary to plaintiff's cause of action, also, that defendant is the person named in the writ and intended to be served, and that the court has acquired jurisdiction of his person, and has jurisdiction of the cause of action, and also constitutes an admission of the due execution of the instrument sued on. (Page 335.)

5. MANDAMUS—DUTIES OF COURT CLERK—FAILURE TO PERFORM—OFFENSES. Where a clerk of the city court refused to enter a default judgment as it was his legal duty to do, pursuant to

---

[1] State v. Morse, 31 Utah, 213, 87 Pac. 705, 7 L. R. A. (N. S.) 1127.

the requirements of Comp. Laws 1907, sec. 3179, made applicable to city courts by Laws, Utah 1901, c. 109, sec. 28 (Comp. Laws 1907, sec. 686x29), it was no answer to a mandamus proceeding to compel him to enter such judgment that the judge of the court had directed him to enter no such judgment.   (Page 337.)

6. JUDGES—DUTIES—EXERCISE—MANNER.  A judge has no duty to perform with reference to a case filed in the court until a party or some one interested therein, invokes his judgment in some legal manner.  (Page 337.)

7. CLERKS OF COURTS—DUTIES—PERFORMANCE—DIRECTION BY JUDGE. Where the clerk of a court refuses to perform a duty required by law, the judge of the court may require the clerk to perform the duty and may enforce his order by contempt proceedings. (Page 339.)

8. COURTS—SUPREME COURT—JURISDICTION—CONTROL OVER LOWER COURT PROCEEDINGS.  Where a clerk of a city court refused, as ordered by the judge of the court, to perform a legal duty to enter judgment by default and the judge when applied to refused to compel the clerk to enter the judgment, the Supreme Court, in the exercise of its power to control the proceedings of lower courts, could compel the clerk to act by mandamus in the same manner as the judge of the lower court ought to have done.  (Page 339.)

McCARTY, J., dissenting.

Original application for writ of mandamus, by the Utah Association of Credit Men against J. M. Bowman, Judge of the Civil Division of the City Court of Salt Lake City, and against B. S. Rives, *ex officio* clerk of such court, to compel entry of a default judgment by the clerk under Complied Laws 1907, section 3179, made applicable to city courts by Laws 1901, chapter 109, section 28 (Comp. Laws, 1907, sec. 686x29).

GRANTED.

*Stephens, Smith & Porter* for plaintiff.

*J. Dininny* and *J. M. Bowman* for defendants.

FRICK, J.

This is an original application to this court for a writ of mandate.  The application is in the form of an affidavit

in which substantially the following facts are made to appear:

The defendant J. M. Bowman is the judge who presides over the Civil Division of the City Court of Salt Lake City, and the defendant B. S. Rives is *ex eoffcio* the clerk of said court. On the 18th day of July, 1910, the plaintiff caused a summons to be issued out of the Civil Division of said court in an action commenced by the plaintiff herein against one A. L. Ball, which summons was duly and timely served on said Ball on the 26th day of July 1910, and a return of such summons in due time and a proper form was made and filed in said action, and on the 22d day of July, 1910, plaintiff duly filed its verified complaint against said Ball with the clerk aforesaid. Plaintiff then sets forth a copy of the complaint filed in the action aforesaid, from which it is made to appear that the plaintiff stated a good cause of action against said Ball upon an account for good sold and delivered by the Anderson Taylor Company, a corporation, to said Ball, upon which account there remained then unpaid the sum of forty-four dollars and seventy-four cents, which was duly assigned to the plaintiff, and for which it demanded judgment against said Ball. In said affidavit it is further stated on the 22d day of August, 1910, no appearance had been made by said Ball in said action, and that he was in default, and that such default had been duly and regularly entered by said clerk against said Ball; that thereafter, and on said last-named date, plaintiff requested said clerk to enter judgment in favor of plaintiff and against said Ball upon said default for said sum of forty-four dollars and seventy-four cents and four dollars and forty cents, in accordance with the demands of plaintiff's complaint; that said clerk wrongfully refused to enter said judgment, which refusal is based upon the sole ground that said J. M. Bowman, the judge of said court, "had directed him (said clerk) to enter no default judgments;" that on the same day in said city court, and in open court, the plaintiff moved for judgment against said Ball for the amount aforesaid, which judgment was asked upon the papers filed in the action, and for

the reason that said Ball was in default, which had been duly entered by the clerk as aforesaid. The judge denied the motion upon the sole ground that he had requested the plaintiff to submit evidence or proof in support of the allegations in the complaint, which plaintiff declined to do, but insisted upon judgment by default. The plaintiff in his application prayed that the defendants be required to enter judgment as prayed for, or show cause why they should not be compelled to do so. An alternative writ was duly issued, to which both defendants appeared, and in separate demurrers assailed the application upon the ground that the facts therein stated are insufficient to entitle plaintiff to the relief prayed for, or to any relief. The case has been submitted upon said demurrers.

The application for the writ is based on subdivision 1 of section 3179, Comp. Laws 1907, which reads as follows: "In an action arising upon contract for the recovery of money or damages only, if no answer, demurrer, or motion has been filed with the clerk of the court within the time specified in the summons, or such further time as may have been granted, and the complaint and proof of service of summons shall have been filed, the clerk, upon application of the plaintiff, must enter default of the defendant, and immediately thereafter enter judgment for the amount specified in the complaint, including costs, against the defendant. . . . If the complaint shall not have been verified, it must be verified before judgment is entered." The foregoing provisions, when enacted, were intended to, and did, apply only to the district courts. In 1901, however, when the city courts were created, the provisions were made applicable to the city courts. (Laws Utah 1901, p. 115, section 28 [Comp. Laws 1907, section 686x29].) The provisions were, however, in force long before the territorial government was merged into a state government. During territorial days they were contained in Comp. Laws 1876, section 1376. From that compilation they were carried into volume 2, Comp. Laws 1888, p. 278, in which they constituted subdivision 1 of section 3345. After statehood the provisions were carried into Rev-

St. 1898, as section 3179, from whence they were copied
into Comp. Laws 1907 as section 3179, as before stated.
Tracing the history of the provisions further, we find that
since 1872 they were part of section 585 of the California
Code of Civil Procedure, and that they existed prior to that
time, as is shown from a reference to them by Mr. Chief
Justice FIELD in his opinion rendered in the case of *Kelley
v. Van Austin,* 17 Cal. 564, which was decided in April,
1861. We also find that Mr. Justice Emerson of the Su-
preme Court of the Territory of Utah, in the case of *Noun-
nan v. Toponce,* 1 Utah 168, referred to the provisions as
early as May 1874. By reference to the decisions of other
courts, which are hereafter referred to, it will be seen that
similar provisions existed and have been in force in many of
the states of the Union ever since the reformed procedure
became effective in 1848, and no doubt had existed in some
form, either statutory or as a rule of court, long before that
time. Upon the latter subject, see *Fidelity Deposit Co. v.
United States,* 187 U. S. 321, 322, 23 Sup. Ct. 120, 47 L.
Ed. 194.

Notwithstanding this venerable history, the statute is now
assailed by both the clerk and the judge of the city court
as being unconstitutional for the reason that it confers ju-
dicial functions upon a mere ministerial officer. In this con-
nection it is strenuously urged that from the terms of the
statute themselves it is plain that before entering a default
judgment the clerk must exercise his judgment in determin-
ing whether the conditions required by the statute exist or
have been complied with, namely: (1) Is the action one
coming within the purview of the statute? (2) Is the com-
plaint properly verified? (3) Has summons been issued and
served upon the defendant? (4) Is the defendant legally in
default?

Conceding that the clerk, before entering a default, must
determine whether or not the foregoing conditions exist,
yet it does not necessarily follow that in doing so he acts
in a judicial rather than in a ministerial capacity in enter-
ing judgment. It very often happens that a ministerial offi-

cer, before he is required to act, must determine whether or not some condition or particular fact upon which his official act is based exists. If the law imposes the duty upon the officer to act after determining that the condition or fact upon which he must act exists, and he finds, or concedes, that the condition is present or that the fact exists, then he acts in obedinece to the law imposing the duty, and his act is ministerial, and not discretionary nor judicial. After an officer concedes that all the conditions which impose upon him the duty to act exist, and the law invests him with no discretionary power with regard to the official act required of him, then the officer cannot excuse his refusal to act upon the ground that he had to exercise judgment in ascertaining the existence or nonexistence of the facts upon which his act is based. Under such circumstances, the facts being conceded, the official act is imposed by law which the officer must obey. This principle is illustrated in the cases cited by Mr. Merrill in his work on Mandamus, sections 30, 48, to which we refer. It is also illustrated in another form by this court in *State v. Morse,* 31 Utah 213, 87 Pac. 705, 7 L. R. A. (N. S.) 1127, where, after the facts were found, we required the judge of the district court to enter a specific judgment. Moreover, an official act may be quasi judicial or discretionary, yet if the discretion is qualified, and the refusal to perform the act is merely capricious, arbitrary, or wrongful, the officer may, nevertheless, be coerced by mandamus to do the act. This is elementary doctrine. If the principle is applied to the statute under consideration, no difficulty will be found in determining that the clerk acts purely ministerially in entering a judgment upon default. True, he must look to the complaint, and from it determine whether the action is one contemplated by the statute. He must, in the same way, determine whether the complaint is duly verified. Whether a proper summons has been issued and properly served on the defendant, the clerk determines from an inspection of that instrument and the return showing the service. When he has determined these things, all that is left for him to determine is whether

the time within which the defendant must appear has elapsed. This he does by merely comparing dates. When the clerk concedes, therefore, that the action in question comes within the statute; that the complaint is properly verified; that a proper summons has been issued, and has been duly served upon the defendant in the action; and that the defendant is in default—then, by virtue of the statute, it becomes the duty of the clerk to "enter judgment for the amount specified in the complaint, including costs, against the defendant." This duty is imposed by law, and the clerk has no discretionary powers with respect thereto. His act in **2, 3** entering such a judgment is no more judicial or discretionary than his act in entering a judgment upon the verdict of a jury or the findings of the court would be. In either case the law imposes the duty, and in entering the judgment the clerk merely executes what the law requires of him.

It is contended, however, that before a judgment can be entered it must be rendered or pronounced by virtue of some legal authority, and that rendering a judgment necessarily implies a judicial act. In this connection to have recourse merely to the usual definitions of a judgment does not aid us much, if at all, in arriving at a correct solution of the questions involved in this proceeding. To arrive at such a solution we must bear in mind that every judgment may be viewed in a double aspect. In one view a judgment represents the result of the mental operation of someone clothed with the legal power to hear and determine questions of fact or mixed questions of law and fact. The final conclusion or result arrived at after considering the facts and circumstances submitted to such a person, may be called the judgment. In arriving at the result the person pronouncing judgment no doubt acts judicially. Such a judgment, therefore, is the result of some mind acting judicially; and such a judgment, like all judgments, is entered to enable the one in whose favor it is rendered to enforce it. In another aspect a judgment may not require any mental operation at all. In case the facts and conditions upon which the judgment

is based are conceded or not disputed, the law may direct
what the judgment shall be, and in such event may also desig-
nate the person who shall enter the judgment which the law
directs.  Such a judgment, like the one pronounced by some-
one with authority, is also entered so that it may be en-
forced.  The latter judgment, however, is not based upon
the result obtained by consideration of and weighing and con-
flicting or disputed facts, but is directed by law upon con-
ceded or undisputed facts.  The person entering such a judg-
ment, therefore, acts merely as the agent of the law, and in
doing so acts in a ministerial and not in a judicial capacity.
It is entered, however, for the same purpose that the first
one is, namely, that the party who is entitled to certain relief
may enforce it.

The question of whether the person who is clothed with the
power of entering judgment where the facts are conceded, as
upon a default after personal service, acts judicially or min-
isterially has frequently been before the courts, and, while
the decisions are apparently not strictly in harmony, there
is, in principle, no great difference among them.  In the
case of *Kelley v. Van Austin, supra,* Chief Justice Field
referring to the capacity in which the clerk acts in entering
judgment under the foregoing provisions, states the doctrine
in the following words:  "The clerk in entering judgment
upon default acts in a mere ministerial capacity.  He exer-
cises no judicial functions.  The statute authorizes the judg-
ment, and the clerk is only an agent by whom it is written
out and placed among the records of the court."  In a later
case, namely, *Bond v. Pacheo,* 30 Cal. 536, Mr. Justice Saw-
yer, in referring to what Mr. Justice Field had said in the
preceding case, states that in such proceedings, in entering
judgments, to some extent at least, "the clerk exercises the
functions of the court."  By this is meant that the judgment,
although entered by the clerk, is, nevertheless, in contempla-
tion of law, the judgment of the court in which it is entered.
This doctrine is also sustained and applied in *Wallace v.
Eldredge,* 27 Cal. 496, *Providence Tool Co. v. Prader,* 32
Cal. 634, 91 Am. Dec. 598, and other later California

cases. The question has also been before the Supreme Court of Oregon, as appears from the cases of *Graydon v. Laxton,* 3 Ore. 251, *Crawford v. Beard,* 12 Ore. 447, 8 Pac. 537, and *Talbot v. Garretson,* 31 Ore. 256, 49 Pac. 978. The Oregon Supreme Court follows California, and expressly holds that the statute is not open to the objection urged against it by the defendants. The same doctrine is upheld by the courts of Wisconsin, Florida, Iowa and New York, as will be seen from the following well-considered cases: *Well v. Morton,* 10 Wis. 468; *Frankfurth v. Anderson,* 61 Wis. 107, 20 N. W. 662; *Gamble v. The Jacksonville, etc.,* Ry. Co., 14 Fla. 226; *Fred. Miller Brewing Co. v. Capital Ins. Co.,* 111 Iowa 590-597, 82 N. W. 1023, 82 Am. St. Rep. 529; *Bullard v. Sherwood,* 85 N. Y. 253. See, also, *Sperling v. Calfee.* 7 Mont. 525, 19 Pac. 204, and *Nounnan v. Toponce,* 1 Utah 168, where the statute was considered in the light of the organic acts creating the Territories of Montana and Utah, and where both territorial Supreme Courts held that in entering judgments under the statute the clerk acts merely in a ministerial capacity. For other cases we refer the reader to 23 Cyc. 758, where the doctrine is stated in accordance with the foregoing views and where other cases are referred to. The question is also discussed in 1 Freeman on Judgments (4th Ed.), section 38, where the author, in referring to judgments upon default entered by the clerk, says: "The ministerial act of the clerk must be supported by a judicial act pronounced by the court in express terms, or incontemplation of law. The clerk is, in some contingencies, authorized to enter judgment by default; but in these instances the court, in contemplation of law, pronounces the judgment, though, as a matter of fact, no action may be taken by the presiding judge." The view, as expressed by Mr. Freeman, is the view entertained by the Supreme Courts of Florida, Iowa, and Wisconsin, as will be seen by reference to the cases we have cited from those states. In 1 Black on Judgments (2d Ed.), section 88, the same doctrine is announced.

The only court, so far as we are aware, that has held to the contrary view is the Supreme Court of Illinois, as ap-

pears from the case of *Hall v. Marks,* 34 Ill. 358. The reasoning in that case is, however, not satisfactory nor of compelling force. Moreover, that case is greatly weakened by the admission therein made that a clerk has the power to enter judgment by confession and that in doing so he acts entirely in a ministerial capacity. It seems to us that if it be conceded that a clerk may enter judgment by confession, then it logically follows that he may, when authorized by a proper statute, also enter judgment upon default if he complies with the conditions imposed by the statute. To make default after personal service is tantamount to an admission that the plaintiff is entitled to a judgment as prayed for by him under a statute like the one under consideration. Such is the great weight of authority. In 23 Cyc. 752, the law upon that subject is clearly and tersely stated in the following language: "A default is an admission of every material and traversable allegation of the declaration or complaint necessary to plaintiff's cause of action that the defendant is the person named in the writ and intended to be served, and that the court has acquired jurisdiction of his person, and has jurisdiction of the cause of action. Also admits the due execution of the note, contract, or other instrument sued on." Further on, at page 753, it is said: "If the amount of his (plaintiff's) damages is ascertainable by mere calculation, the defendant admits his right to recover the sum demanded in the declaration or complaint, and judgment may be entered therefor." In *Hunt v. City of San Francisco,* 11 Cal. 259, it is said: "A default confesses all the issuable facts," and it is further held that a default amounts to a confession of "indebtedness . . . on the account alleged in the complaint." In *Schueler v. Mueller,* 193 Ill. 402, 61 N. E. 1044, it is held that a default admits all the facts in the complaint that are well pleaded. To the same effect is *Smith v. Carley,* 8 Ind. 451. In *Hershey v. MacGreevy,* 46 Ark. 498, Mr. Chief Justice Cockrill, in passing upon the effect of a default in an action upon an account, said: "Upon failure to answer the material allegations of a complaint, they stand admitted." It was ac-

cordingly held that plaintiff was entitled to judgment upon the account for the amount thereof when verified, without further proof. In *Bosch v. Kassing,* 64 Iowa 312, 20 N. W. 454, it is said: "A default is an admission of the cause of action stated in the complaint." Mr. Justice Finch, in his opinion in *Bullard v. Sherwood,* 85 N. Y. 256, in speaking of the effect of a default under statutory provisions like ours, says: "The party, therefore, who makes default in presence of these provisions practically consents to such entry of judgment. He thereby admits that he is indebted in the full amount claimed and concedes that judgment should be entered for that sum." It is further held in that case that under statutory provisions like those under consideration the law in effect directs the judgment, and that "the sum demanded must be awarded, and no discretion is left anywhere." The same doctrine is maintained, although under different circumstances, in the case of *Corthell v. Mead,* 19 Colo. 392, 35 Pac. 741. See, also, 1 Black on Judgments (2d Ed.), section 84.

It is deemed unnecessary to multiply cases upon this point. We may say in passing, however, that we have found no well-considered case which announces a contrary doctrine. Nor can we perceive any good reason why the foregoing doctrine is not entirely sound. Under the practice prevailing in this state the summons which is served on the defendant, in explicit terms, admonishes him that in case he fails to appear and defend the action "judgment will be rendered against you according to the demand of the complaint." When thus admonished and he deliberately fails to appear or answer the cause of action, by what course of reasoning can it be said that the defendant is not willing that such a judgment be entered against him? No other legally can be. Is his silence not a tacit admission that he owes the plaintiff what he claims? The only difference between entering a judgment by confession and entering one upon default under such a statute is that, in the first instance, the defendant in proper terms expressly confesses judgment, while in the second he tacitly consents by his silence that judgment may be

entered against him for the amount claimed in the complaint. In entering judgment, therefore, in either case, the clerk acts merely ministerially, and with either the expressed or implied consent of the defendant. The question, therefore, raised by the defendants, whether considered in the light of the great weight of authority or upon principle and sound reason, must still be answered in the same way, namely, that the provisions contained in subdivision 1 of section 3179, *supra,* are both reasonable and constitutional, and that in enforcing them the clerk acts ministerially merely.

But if we entertained a substantial doubt upon the question the result would still have to be the same, for the reason that the practice of entering judgments upon default in obedience to the provisions of said section has prevailed too long in this jurisdiction to be disturbed by the judiciary unless the unconstitutionality of the statute is palpably clear. The serious consequences that inevitably result from declaring prior judgments void are ordinarily alone sufficient to deter the courts from taking any action that will prejudicially affect the rights acquired under such judgments, unless the law compels such action. In this case, as we have pointed out, both law and reason are in favor of upholding judgments that are entered upon default by the clerk.

The only remaining question, therefore, is in view of the conceded facts, what relief, if any, should be granted in this case? As we have pointed out, the judge and clerk are both made parties to the proceeding, and both have separately demurred. The only excuse the clerk offered at the hearing was that the statute is unconstitutional and that the judge had "directed him (the clerk) to enter no default judgments." If we are right in our conclusions so far, then the clerk has offered no legal excuse for refusing to enter judgment as requested in this case by the plaintiff. The clerk cannot shield himself behind a mere general order of the judge in a matter over which the judge has no control. The judge of the city court has absolutely nothing to do with a case until a party to an

action, or some one interested therein, invokes his judgment in some legal manner. It is palpable that if the judge may upon his own motion prevent the clerk from entering default judgments under the statute in question, then the order of the judge and not the provisions of the statute control. The judge in the absence of discretionary power, is the mere agent of the law, and, in the absence of some inherent power, may exercise those powers only which are conferred upon him by statute. Under the provisions of the statute in question the duty and the legal power to enter default judgments are imposed and conferred upon the clerk, and hence, by implication at least, are withheld from the judge. If in such a case the judge may not direct what judgment shall be entered, he may not direct when and under what circumstances it shall be entered. No doubt, if before judgment is entered the defendant properly invokes the judgment of the judge with respect to any matter that affects the right to enter judgment, the judge has power to act, and the clerk's power to enter judgment may be suspended until the judge has determined the question presented for determination. If the judge should determine that some element is lacking which authorizes the entering of judgment, when his judgment is properly invoked, as aforesaid, when the clerk is shorn of his power to enter judgment by default. This is well illustrated in the case of *Elder v. Grunsky,* 127 Cal. 67, 59 Pac. 300. But before some interested party invokes the judgment of the judge in a legal and proper manner, he is as powerless to interfere with the duties of the clerk in entering judgment upon default as the clerk is powerless to interfere with the orders of the judge if made upon a proper motion or other proceeding in a pending case.

From what has been said it follows that it was the duty of the clerk to enter a judgment as prayed for in plaintiff's complaint. This was a legal duty. When the clerk refused to perform a legal duty which the plaintiff was entitled to have performed, we think it was proper for it to call the fact to the attention of the judge of the city court, and by motion or otherwise invoke the aid of the judge. The judge had

the undoubted right to require the clerk of his court to comply with a positive statutory provision, and where there were neither disputed nor conflicting facts, and the law had been complied with, it was also the duty of the judge to direct the clerk to proceed to discharge the duty imposed on him by the statute. If the clerk refused after being directed by the judge he would clearly be in contempt of court and subject to punishment. While in this case the motion denied by the judge did not strictly conform to the foregoing suggestions, yet it is clear that both the judge and the clerk fully understood what the plaintiff desired to obtain by the motion. In this regard substance rather than form must control. The clerk therefore wrongfully refused to perform a legal duty, and the judge wrongfully or illegally refused to require the clerk to perform such duty. In view, therefore, that the judge has refused to compel the clerk to act, we must now do what the judge ought to have done. It is therefore ordered that a peremptory writ of mandate issue against the clerk requiring him to enter judgment as prayed for in plaintiff's complaint filed in the action to which reference has been made in this opinion.

In view of all the facts and circumstances of this case, the action against the judge should be dismissed, and the plaintiff should not be awarded costs. It is so ordered.

STRAUP, J., concurs.

McCARTY, J. (dissenting).

I am of the opinion that the writ of mandate should be denied and the petition dismissed. In view of the far-reaching effect of the foregoing opinion in curtailing, as I think it does, the *nisi prius* courts of this state in the exercise of their constitutional powers, I shall briefly discuss the questions involved, and endeavor to point out wherein I think the reasoning of my associates is fallacious, and the conclusions reached by them unsound.

The authorities practically all agree as to what is neces-
sary to constitute a judgment. While they do not all adopt
the same phraseology in defining a judgment, yet the legal
effect of the language used is the same. Volume 4, Words
and Phrases, pp. 3837-3842, contains many excerpts from de-
cisions of both the federal and state courts in which a judg-
ment is defined. The following are a few of the many illus-
trations there given as to what constitutes a judgment.

On page 3839 it is said. "Judgment is the sentence of
the law pronounced by the court on the matters contained in
the record."

And again, on the same page: "Among numerous defini-
tions of the term 'judgment' this one is deemed sufficiently
accurate, to wit: 'The decision or sentence of the law, pro-
nounced by a court or other competent tribunal on the mat-
ter contained in the record.' "

And likewise, on page 3831, it is said:

"A judgment is the sentence of the law pronounced by a
court or a judge thereof upon a matter in issue in any cause
before it.

"A judgment is a decision or sentence of the law given by
a court of justice or other competent tribunal as the result
of proceedings instituted therein for the redress of any
injury.

"A 'judgment' is the determination or sentence of the law
pronounced by a competent judge or court of the result of
the action or proceeding instituted in such court, affirming
that upon the matter submitted to it for its decision a legal
duty or liability does or does not exist."

Section 3183, Comp. Laws 1907, provides: "A judgment
is a final determination of the rights of parties in an action
or proceeding."

Under the Constitution of our state the "determination"
of the matter in the "action or proceeding" must be by a
lawfully constituted court having jurisdiction of the parties
to such action or proceeding and of the subject-matter there-
in involved. In 1 Black on Judgments, p. 2, the author
says: "A judgment is properly neither hortatory nor im-

perative. It does not advise or recommend, nor, on the other hand, does it prescribe any act or course of conduct. In respect to the latter particular the case is different, of course, with a decree in equity, but we are now using the term 'judgment' in its narrowest sense. In general, therefore, it neither counsel nor commands, but simply asserts. Again, although it is the affirmation of the law, *it is necessarily pronounced by the mouth of a court or judge.* And the decision of any arbiter, self-constituted or chosen by the litigants, is no judgment. The law speaks only by its appointed organs. It is only when *the deliverance comes from a true and competent court that it is entitled to be called a judgment. . . . .* We may therefore define a judgment as the determination or sentence of the law, *pronounced by a competent judge, or court,* as the result of an action or proceeding instituted in such court, affirming that, upon the matters submitted for its decision, a legal duty or liability does or does not exist." (Italics mine.)

Sections 1 of article 8 of the Constitution of Utah provides that "the judicial power of the state shall be vested in the Senate sitting as a court of impeachment, in the Supreme Court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law." The judicial power thus vested in the courts cannot be delegated by the courts themselves nor by legislative enactment. On page 589, Cooley's Const. Lim. (7th Ed.), the author says: "A party in any case has a right to demand that the judgment of the court be given upon his suit, and he cannot be bound by a delegated exercise of judicial power whether the delegation be by the court or by legislative act devolving judicial duties on ministerial officers." And the same author, on page 43 of his work, says: "When a department is created for the exercise of judicial authority, the act itself constitutes a setting apart to it for exercise of the whole judicial power of the sovereignty with such exceptions only as the Constitution itself may make. As therefore the determination of a controversy on existing

facts where there are adverse interests is judicial action, the act is not within the compass of legislation."

In 11 Enc. Pl. and Pr. 810, it is said: "From the definitions collated in the preceding section may be gathered the essential elements of every judgment. The first of these is that the decision must be that of a duly constituted court. The rendition of a judgment is a judicial act, and must be performed by a judicial, and not by a ministerial, officer of the court. Thus the decision must be rendered by the judge, and not by the clerk of the court, in order to constitute a judgment."

In 23 Cyc. 668, the principle here involved is tresely and well illustrated in the following language: "It is essential to a judgment that it should appear to be the sentence or adjudication of a court or judicial tribunal, and to be the judicial act of the court as such, or of the judge or magistrate who holds or presides in such court."

It necessarily follows from the law as thus declared that the clerk of a court, in entering a judgment, acts in a ministerial capacity only, and it matters not whether the judgment entered is a default judgment, a judgment by confession, or one rendered in a cause tried to the court without a jury, or one rendered in conformity with the verdict of a jury. In either case the entering of a judgment is a ministerial, and in no sense a judicial act. Mr. Freeman, in his work on Judgments, section 38, says: "The rendition of a judgment is a judicial act; its entry upon the record is merely ministerial. A judgment is not what is entered, but what is ordered and considered. . . . While its entry of record is not indispensable to a judgment, a judgment is essential to the validity of the entry. The ministerial act of the clerk must be supported by a judicial act pronounced by the court in express terms or in contemplation of law."

It is conceded in the foregoing opinion that the clerk, in entering a judgment, acts in a ministerial capacity only. The effect, however, of the conclusions reached on the merits is to deprive the court of all judicial power in default cases, and to vest the clerk with such power. This feature of the

opinion I shall again refer to further along in my discussion of the case.

In the prevailing opinion reference is made to the authority conferred by statute upon the clerk to enter judgment by confession in certain cases, provided the parties to the proceeding comply with the conditions imposed by statute, and then the following observation is made: "It seems to us that if it be conceded that a clerk may enter judgment by confession, then it logically follows that he may, when authorized by a proper statute, also enter judgment upon default if he complies with the conditions imposed by statute. To make default after personal service of summons is tantamount to an admission that the plaintiff is entitled to a judgment as prayed by him under a statute like the one now under consideration." And again, further along in the opinion, it is said: "The only difference between entering a judgment by confession and entering one upon default under such a statute is that, in the first instance, the defendant in proper terms expressly confesses judgment, while in the second he tacitly consents by his silence that judgment may be entered against him for the amount claimed in the complaint. In entering judgment, therefore, in either case, the clerk acts merely ministerially, and with either the expressed or implied consent of the defendant."

There is a clear distinction between a judgment taken by confession and a default judgment. (*Third Nat. Bank v. Divine Groc. Co.,* 97 Tenn. 603, 37 S. W. 390, 34 L. R. A. 445; *Hall v. Marks,* 34 Ill. 358.) In the one case the judgment is rendered and entered in pursuance of the voluntary agreement of the parties, and the defendant appears in court, and by his sworn statement in writing authorizes the rendition and entry of the judgment against him for a specified sum. Whereas, in cases where the defendant makes default, the judgment is neither rendered nor entered because of any voluntary affirmative act of the defendant. Nor does he, in fact, either expressly or impliedly, consent to the taking of the default judgment. Nor does the defendant by his default necessarily "admit" or "confess" that he is indebted

to the plaintiff in the sum claimed, as the fore-going opinion and many of the authorities seem to hold.

In this state the court, in cases where judgments are taken by default, acquires jurisdiction of the person of the defendant by the service of summons. The provisions of the Code providing for the service of summons, so far as material here, are as follows: "The summons must be served by delivering a copy thereof as follows: . . . . (8) In all other cases to the defendant personally or by leaving such copy at his usual place of abode with some suitable person of at least the age of fourteen years." (Comp. Laws 1907, section 2948.)

It will be noticed that under this statute service of process sufficient to give the court jurisdiction over the person of the defendant may be made when he is away from his usual place of abode (in fact he may be temporarily out of the state) by leaving a copy of the summons at such "usual place of abode with some suitable person," etc. The whereabouts of the defendant may be unknown to the person to whom the summons is delivered, and the defendant may not be advised of the bringing of the action until long after judgment is taken against him. Certainly under such circumstances the defendant by failing to appear and defend in the action neither "admits" nor confesses" that he is indebted to the plaintiff in the sum named in the complaint. A person, merely because he is made a defendant in an action, cannot be held to have admitted or confessed the truth of the allegations of the complaint before he is personally advised of the bringing of the action, which, as I have observed, may not be until long after judgment is taken against him. And even when the defendant is personally served with summons and he fails to appear and defend in the action, it does not necessarily follow that he thereby admits or confesses the truth of the allegations of the plaintiff's complaint. The claim sued on may be entirely groundless, and the defendant may be conscious of that fact, yet he may have a multiplicity of reasons for not appearing and defending in the action. A judgment by default would not make the allegations of

the complaint evidence in another action. (*In re Van Buren* (D. C.), 2 Fed. 643; *Cromwell v. County of Sac*, 94 U. S. 356, 24 L. Ed. 195.) Yet if the failure of the defendant to appear and answer within the time allowed by law when properly served with summons is, in fact, an admission on his part of the validity of the claim in suit, and that he is justly indebted to the plaintiff in such sum, it necessarily follows that the admissions thus made, if material, would be competent evidence against the defendant in another action. I assume that no lawyer would seriously contend that such alleged admissions would, under any circumstances, be admissible as evidence against the defendant in another and independent action.

Some of the authorities hold that the defendant by defaulting, in contemplation of law only, admits the allegations of the complaint to be true. In *Cromwell v. County of Sac, supra,* it is said: "A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit." That is, according to the rule thus announced, the law, for the purposes of the action (not the defendant), admits the allegations of the complaint to be true. (1 Freeman on Judgments, section 538.) Instead of the defendant admitting by his default the legality of the plaintiff's claim, I think it may more properly be said that he thereby waives his right to appear and defend in the action. The question, however, of whether or not there is, in principle, a distinction between a judgment taken by confession and a default judgment is not of controlling importance in this case, because in either event the judgment to be valid must, at least in contemplation of law, be the decision of the court.

In the prevailing opinion it is said: "If the judge may prevent the clerk from entering default judgments under the statute, then the order of the judge and not the provisions of the statute control. The judge is the mere agent of the law, and, in the absence of some inherent power, may exercise those powers only that are conferred upon him by statute. Under the provisions of the statute in question the duty and

the legal power to enter default judgments are imposed and conferred upon the clerk, and hence, by implication at least, are withheld from the judge. If the judge may not direct what judgment shall be entered, he may not direct when and under what circumstances it shall be entered."

By the provisions of the Constitution, to which I have referred, the judicial power of the state is vested in the courts therein mentioned, and no other department of the state government can legally, either directly or indirectly, exercise such power. And in the case under consideration the judge of the city court was not compelled, nor was he authorized, to look to the statute for his authority to judicially determine the questions presented. This power is vested in the courts by the Constitution, and it can neither be withheld nor abridged by legislative enactment. And if the effect of the statute is to require the clerk to enter judgments before they are rendered as the writ of mandate in this case directs, or if the statute in effect withholds from the judge the power to render judgments in default cases, then the statute is clearly in conflict with the provisions of the Constitution herein before mentioned. But I do not so construe the statute. The mere fact that the judge may not in each default case convene court and announce his decision from the bench in open court does not make the judgment entered by the clerk in such cases any less the judgment of the court because of that fact. (*Gamble v. Jacksonville P. & M. R. Co.*, 14 Fla. 226; *Tallman v. McCarty et al.*, 11 Wis. 401.) Nor is it essential that every judicial act of the judge should be specifically and in detail dictated to the clerk by him. But it is essential that the entry of the judgment by the clerk is at least with the approval of the judge. In the rendering of a judgment the court, and not the clerk, is the medium through which the law speaks. And the clerk, in default cases, is merely the arm of the court or the medium through which it acts in announcing its decision in such cases. Therefore, the denial of the writ in this case would not, in my opinion, prejudicially affect the rights heretofore acquired under default judgments, as the prevailing opinion seems to indicate. Be-

cause, as I have stated, judgments in such cases are, in contemplation of law, the judgments of the courts in which they are entered.

The writ in this case directs the clerk to make an entry labeled a judgment which is not, in contemplation of law nor otherwise, a judgment of the court. The record affirmatively shows that no judgment has been rendered. In fact, the very thing plaintiff complains of in his petition for a writ is, that the judge refuses to render a judgment in its favor on its verified complaint. In other words, the writ directs the clerk to enter a judgment in an action where the record affirmatively shows that no judgment has been rendered. According to the legal effect of the prevailing opinion the judge, in certain cases where the defendant makes default, is a nonentity. He is not even a figurehead in the proceedings. Figuratively speaking, he is relegated to one side, and the clerk, who is only a ministerial officer of the court, is not only authorized, but is required, to enter judgment for the plaintiff upon his verified petition. We therefore have a class of cases in which judgments may be obtained without either the actual or presumptive intervention of the court or judge—judgments which it is the duty of the clerk to enter of record, notwithstanding any order of the court or judge to the contrary. Now, if under the statute, judgments in default cases may be and are obtained merely by operation of law without presumptively or otherwise invoking the action of the court, and the statute is susceptible of no other reasonable construction, then it is clearly in conflict with the provisions of the Constitution herein mentioned and ought not to be upheld.

There are other reasons why the writ in my opinion, ought to be denied and plaintiff's petition dismissed. Plaintiff alleged in its petition that the default of the defendant was duly and regularly entered by the clerk of the city court, and that plaintiff thereafter requested the clerk to enter a default judgment in its favor against the defendant in said action, and that the clerk refused and assigned as a reason for his refusal that the judge of the city court had directed him to

enter no default judgments. Plaintiff further alleged that upon the refusal of the clerk to enter a default judgment it "moved the court upon the files therein for a judgment against the said A. L. Ball and in favor of the plaintiff, . . . but that the said J. M. Bowman wrongfully refused and denied said motion, and directed B. S. Rives, *ex officio* clerk, to enter an order denying said motion." If this were a case where the court or judge had arbitrarily and contumaciously refused to decide some question arising during the course of the trial material to the cause which it was his legal duty to decide, or had refused to render judgment on the merits when the cause was submitted for decision, mandate would undoubtedly be the proper remedy to compel the court or judge to proceed and adjudicate the matter or question submitted. This, however, is not that kind of a case. Here complaint is made, not because the court refused to decide the case at all, but because the court refused to decide the case in a particular way. The court had jurisdiction of the person of the defendant and the subject-matter of the action, and, under the statute authorizing the entry of judgment by default in certain cases, could no doubt have legally rendered a judgment for plaintiff on the record made and presented, but he was not bound to do so. The court in such case, the same as in all other cases, could exercise its discretion in the matter, and the legislature could not by legislative enactment deprive the court of such discretion. If it were within the constitutional power of the legislature to do this, then it necessarily follows that the legislature has the power to divest a court of all judicial power and to make the judge thereof a mere ministerial officer, or, as is done in this case, dispense with his services entirely, which of course, under the Constitution, it cannot do. It is a well-recognized rule of law that while mandamus will lie to compel a court to proceed to judgment when a case is submitted to it for decision, the writ will not lie to compel the court to render a particular judgment. (Merrill on Mandamus, section 32.)

In 26 Cyc. 210, the rule is tersely, and, I think correctly, stated in the following language: "When the parties have

an absolute right that the court proceed to enter judgment, mandamus will lie; but mandamus to enter a judgment will not issue where its effect would be to review or control the judicial discretion of the inferior court, and where an appeal lies and is adequate mandamus will not go."

In 2 Spell. Extr. Relief, section 1384, the author says: "Mandamus will lie to compel the performance of duties purely ministerial in their nature, when they are so clear and specific that no element of discretion is left in their performance, but as to acts and duties necessarily calling for the exercise of judgment and discretion on the part of the officer or body or person at whose hands performance is required, mandamus does not lie." And again, in section 1389 of the same work, it is said: "The first and most important of the limitations has been variously expressed, but may be reduced to a plain statement, to the effect that mandamus is not a proper remedy to control or direct the decisions of inferior courts in matters wherein they have judicial cognizance and discretion. It is immaterial whether the inferior court has acted properly or improperly in the exercise of a discretionary power, where the discretion has been in fact exercised; if it has not been grossly abused, it cannot be questioned in a mandamus proceeding. So far as the writ affects the action of inferior courts, its use is not to be extended to compel the rendition of a particular judgment, in accordance with the views of a higher court; nor is it the province of the writ to prescribe the parties for whom judgment shall be rendered. This would, in effect, introduce the supervisory power of the appellate court into a cause still pending in the inferior tribunal, peremptorily deciding the case, and compelling the inferior court to give judgment in accordance with the opinion of the higher tribunal."

In this case, however, the prevailing opinion goes much farther than compelling the city court to render and enter a specific judgment in the case. It entirely ignores the city court, and directs the issuance of a writ of mandate directing the clerk to enter judgment in a case where no judgment has been rendered. In other words, this court, in effect, deter-

mines in the first instance what judgment shall be rendered
and directs the clerk to enter such judgment. As hereinbe-
fore stated, the court had jurisdiction of the person of the
defendant and the subject-matter of the action. It therefore
had jurisdiction to make and enter the orders of which com-
plaint is made, and until these orders are set aside by the
court or reversed on appeal they are binding upon the clerk
and the parties to the action. (*Elder v. Grunsky,* 127 Cal.
69, 59 Pac. 300.) In the case of *Tallman v. McCarty, supra,*
this principle 'is well illustrated in the following language:
"No order which a court is empowered, under any circum-
stances in the course of a proceeding over which it has juris-
diction, to make can be treated as a nullity merely because
it was made improvidently or in a manner not warranted by
law, or the previous state of the case. The only question in
such a case is, had the court or tribunal the power, under
*any circumstances* to make the order or perform the act? If
this be answered in the affirmative, then its decision upon
*those circumstances* becomes final and conclusive until re-
versed by direct proceeding for that purpose."

I am clearly of the opinion that the court did not 'exceed
its jurisdiction nor commit error in making the orders men-
tioned. It is evident from the record that the officer of the
plaintiff corporation who verified the complaint under oath
had no personal knowledge whatever of the facts upon which
the claim in suit was founded. Clearly, under these cir-
cumstances, it was not an abuse of discretion for the court
to require plaintiff to introduce at least some legal evidence
in support of the claim sued on before rendering judgment
in its favor.